**OEC–DIASONICS, INC., Defendant–Appellant,**

v.

**Ralph S. MAJOR, Jr., Plaintiff–Appellee.**

No. 50S03–9405–CV–470.

Supreme Court of Indiana.

Dec. 31, 1996.

James H. Ham, III, Joe Emerson, Baker & Daniels, Indianapolis, Jeffrey A. Townsend, Baker & Daniels, Fort Wayne, for Defendant–Appellant.

Robert W. Mysliwiec, Jones, Obenchain, Ford, Pankow, Lewis & Woods, South Bend, Henry J. Price, Price & Barker, Indianapolis, for Plaintiff–Appellee.

**ON PETITION TO TRANSFER**

DICKSON, Justice.

Following a bench trial in this contract case, the trial court entered judgment in the sum of $3,138,118 plus interest, in favor of the plaintiff-appellee, Ralph S. Major, a distributor for the defendant-appellant, OEC–Diasonics, Inc., an orthopedics equipment manufacturer. Multiple issues were presented by the appellant's appeal and the appellee's cross appeal. The Court of Appeals addressed only one issue, reversing and remanding with instructions to enter judgment for the defendant. *OEC–Diasonics, Inc., v. Major,* 622 N.E.2d 1025 (Ind.Ct.App.1993). We previously granted transfer.

In 1969, Orthopedic Equipment Co., Inc. ("OEC") entered into a distributorship agreement with a group of distributors which included the plaintiff. A lawyer for OEC, at that time Terry McCarthy, and Frank Saemann, then OEC's president and chairman of the board, negotiated the agreement for OEC. Under this contract, the plaintiff was to distribute OEC's various orthopedics products in a territory made up of the Carolinas, Virginia, and West Virginia in return for a commission on all sales within the territory. The contract was to last initially for five years, with five five-year renewal options available to both parties. The contract contained language authorizing OEC to void the contract if Major failed to produce an annual increase in direct sales of merchandise in his territory of not less than fifty percent of the company's percentage sales increase.

OEC quickly became dissatisfied with the contract and attempted to terminate the contract in a letter dated October 14, 1970. From 1972 to 1981, the plaintiff and OEC litigated a provision not at issue in this case. In 1978, OEC, under the commission guidelines specified in the 1969 agreement, gave the plaintiff the right to distribute an x-ray device known as the C-arm, which was being marketed by its Medical Systems Division. On May 15, 1981, the plaintiff and OEC modified the contract, changing, among other things, the commission schedules, the plaintiff's territory, and the wording of a best efforts clause.

In the early 1980s, OEC reorganized, establishing the Medical Systems Division as a separate corporate entity called OEC Medical Systems, Inc. ("OECMS"). Both OEC and OECMS then became wholly-owned subsidiaries of OEC International. The plaintiff continued to distribute and sell orthopedic products for OEC and C-arms for OECMS, under the 1969 contract, as modified in 1981. In 1983, Diasonics acquired OEC International. In 1984, Biomet, Inc., acquired all of the stock in OEC while Diasonics continued to own OECMS. In 1985, OECMS changed its name to OEC–Diasonics, Inc.

In 1984, after Biomet acquired OEC, the sales for both Major and OEC–Diasonics decreased, whereupon the defendant terminated its distributorship agreement with the plaintiff. This lawsuit ensued, and after protracted litigation, the trial court entered judgment for the plaintiff in the sum of $3,138,118 plus interest.

The Court of Appeals reversed, concluding that the trial court erred in granting a partial summary judgment for the plaintiff regarding whether this action was barred by a 1988 settlement agreement between Biomet and Major. The Court of Appeals held that the agreement also released OEC–Diasonics from liability in this action. We disagree and affirm the trial court on this issue.

The trial court granted partial summary judgment for the plaintiff, finding that the release executed by the plaintiff in favor of Biomet and OEC did not release the defendant, OEC–Diasonics. The defendant contends that the contract releases it as a "successor" to OEC and that the defendant is therefore a third-party beneficiary of the contract/release. Thus, the defendant argues, the trial court's grant of summary judgment for the plaintiff and refusal to grant summary judgment for the defendant were erroneous.

Federal court litigation between Biomet and the plaintiff regarding a contract dispute similar to the one involved here, resulted in a January, 1988, settlement agreement between the plaintiff and Biomet and OEC ("the Biomet agreement"). Paragraph 9 of the Biomet agreement reads as follows:

Major hereby RELEASES AND FOREVER DISCHARGES Biomet, OEC (and their respective officers, directors, employees, subsidiaries, affiliates, successors and assigns) ... from any and all claims, debts, demands, losses, agreements, actions, accounts, causes of action, damages, and liabilities whatsoever, whether in law or in equity, resulting from, respecting, relating to or arising out of any fact, occurrence or omission existing prior to the date of this Agreement, which Major now has or may later discover in connection with or arising out of any and all matters, transactions or things, including, but not limited to, all matters arising out of or in connection with their distributor relationship or the issues raised by Complaint.

Record at 4389.

Also as part of the Biomet settlement, Major agreed to refrain from selling orthopedic products for five years and to allow Biomet to employ all of Major's salesmen. Biomet agreed to give the plaintiff a 25,000–share stock option and to pay the plaintiff $675,000 at time of settlement and $125,000 a year for the following fifteen years. Major then pursued this action against OEC–Diasonics for breach of the 1969 contract as modified in 1981.

 This Court has held that "release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *Huffman v. Monroe County Community School Corp.*, 588 N.E.2d 1264, 1267 (Ind.1992). The interpretation of a release is determined by the terms of the particular instrument, in light of all facts and circumstances. *Prall v. Ind. Nat'l Bank*, 627 N.E.2d 1374, 1377 (Ind. Ct.App.1994); *Citizens Nat'l Bank of Tipton v. Indianapolis Auto Auction*, 592 N.E.2d 1256, 1258 (Ind.Ct.App.1992). Where, as here, "a contract is unambiguous, the intent of the parties should be determined by the language employed in the document." *Thomas v. Thomas*, 577 N.E.2d 216, 219 (Ind.1991).

 Generally, only parties to a contract or those in privity with the parties have

rights under the contract. *Gonzales v. Kil Nam Chun,* 465 N.E.2d 727, 729 (Ind.Ct.App. 1984). However,

> One not a party to an agreement may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Kirtley v. McClelland,* 562 N.E.2d 27, 37 (Ind.Ct.App.1990) (citations omitted). The intent of the contracting parties to bestow rights upon a third party "must affirmatively appear from the language of the instrument when properly interpreted and construed." *Freigy v. Gargaro Co.,* 223 Ind. 342, 349, 60 N.E.2d 288, 291 (1945) (citing *Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 178 N.E. 498, 501 (1931)). However, it is not necessary that the intent to benefit a third party be demonstrated any more clearly than the parties' intent regarding any other terms of the contract. *Nash Eng'g Co. v. Marcy Realty Corp.,* 222 Ind. 396, 416–17, 54 N.E.2d 263, 271 (1944).

■ The Biomet agreement does not indicate that the parties to that agreement affirmatively intended to release OEC–Diasonics or that the defendant was contemplated as a "successor" for the purposes of this release. Paragraph three of the Biomet agreement reads: "WHEREAS, a dispute has arisen between Biomet and [the plaintiff] arising out of their relationship and the notice of termination by Biomet of an Agreement originally entered into between Major and Orthopedic Equipment Company, Inc. ("OEC"), on September 15, 1969...." Record at 4385. Paragraph 14 of the Biomet agreement reads: *"Successors and Assigns.* This Agreement shall inure to the benefit of, and may be enforced by, and shall be binding on the parties hereto and their respective assigns and successors in interest." Record at 4390.

The agreement's third paragraph does not define OEC or Orthopedic Equipment Co. to include the entity by that name which existed in 1969. The 1969 date only designates when the parties entered into the agreement. Had the parties wished the agreement to encompass the successors of OEC as it existed in 1969, rather than the successors of Biomet and OEC as it existed on and following the 1988 date of the release, the agreement could have so provided. The contract language included "successors" but not "predecessors."

■ The contract must be read as a whole when trying to ascertain the parties' intent. *Bicknell Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1313 (Ind.Ct.App.1991). We must accept an interpretation of a contract which harmonizes its provisions. *First Fed. Savings Bank of Ind.,* 559 N.E.2d at 603. The defendant would be a third-party beneficiary only if we were to read, as the defendant urges, paragraph fourteen's phrase "successors and assigns" to include those parties who had in the past succeeded to or been assigned the rights and duties of the precursors to the contracting parties. Such a construction is not supported by the language of the contract.

The defendant cites *Estate of Carnahan v. ISM, Inc.,* 510 N.E.2d 748 (Ind.Ct.App.1987) for the proposition that third-party beneficiaries can enforce release agreements entered into by other parties. *Id.* at 749. However, *Carnahan* is factually distinct. In *Carnahan* the driver of the vehicle that caused the accident entered into an agreement with the plaintiff which clearly stated that the plaintiff would not pursue a legal action against the driver's principal or master. The driver's employer was therefore clearly an intended beneficiary to the covenant not to sue. In the present case, the plain language of this release, viewed in context, shows that the term successors meant successors of the parties specifically involved in that dispute and resolution. The term did not refer to previous successors, nor successors of predecessors. Additionally, the release language of

the 1989 contract refers to OEC, which had for more than four years prior to the agreement existed as an entity wholly disconnected from Diasonics and its wholly owned subsidiary, OEC–Diasonics, formerly OECMS.

Paragraph 12 of the Biomet agreement further confirms that the contract was not intended to favor the defendant as a third-party beneficiary. This clause provides:

> *Confidentiality.* [The plaintiff] and Biomet agree that the terms of this Agreement, and the circumstances surrounding its making, shall be kept strictly confidential and may be disclosed *only as required by law or as contemplated by this Agreement* in connection with the continuation of the business of Biomet in the Territories or in financial statements prepared by either party.

Record at 4390 (emphasis added). It is not plausible that the parties intended the release to extend to a separate entity who would never learn the terms of the agreement. The language of the agreement, especially when combined with the confidentiality provision, confirms that the parties did not intend the release to benefit the defendant, OEC–Diasonics.

■ The defendant alternatively argues that, because the plaintiff's complaint was premised on OEC–Diasonics succeeding to the liabilities of OEC, if OEC–Diasonics is not a successor of OEC for the purposes of the release in the 1988 Biomet agreement, it is therefore not a successor with respect to OEC's obligations to the plaintiff under the 1969 distributorship agreement. Under this argument the Statute of Frauds would therefore preclude liability because any agreement between the parties after the time the entities were separated would have been oral and not capable of being performed within one year. IND.CODE § 32-2-1-1 (1993). We disagree. The fact that the release language in the 1988 Biomet Agreement does not apply and extend to the defendant OEC–Diasonics does not operate to preclude or diminish its liabilities as a prior successor of OEC through OECMS. The defendant may simultaneously be a successor to the obligations of the 1969 distributorship agreement between the plaintiff and OEC while not a "successor"

as that term reflects the intent of the parties to the separate 1988 Biomet agreement. Because the original 1969 distributorship agreement is in writing, the Statute of Frauds does not preclude OEC–Diasonics' contractual liability.

We therefore conclude that the trial court did not err in granting partial summary judgment, thereby determining that the release executed by the plaintiff in favor of Biomet did not release the defendant, OEC–Diasonics.

The trial court's entry of partial summary judgment is affirmed in accordance with the foregoing opinion. This cause is remanded to the Court of Appeals to address the remaining questions presented on appeal and cross appeal.

SHEPARD, C.J., and SULLIVAN and SELBY, JJ., concur.

BOEHM, J., not participating.

*ORDER ACCOMPANYING REMAND*

With our opinion of this date affirming the trial court's grant of partial summary judgment regarding the non-applicability of the 1988 Biomet release agreement, the sole issue addressed by the Court of Appeals, we are cognizant that the parties have not received appellate review as to the remaining issues originally presented in the appeal. Pursuant to our order granting the appellee's Petition For Transfer, this Court has jurisdiction as to all issues originally presented by the parties to the Court of Appeals. Indiana Appellate Rule 11(B)(3). However, since the time of the parties' oral argument before this Court, Justice Givan and Justice DeBruler have each retired from this Court. We therefore conclude that the full comprehensive review of the remaining issues in this substantial case would best be accomplished by remand to the Court of Appeals, with potential recourse thereafter to a subsequent petition for transfer to this Court.

/s/ Randall T. Shepard
/s/ CHIEF JUSTICE OF
 INDIANA