Donald K. HAIRE and Julie A. Haire,
Individually and as Husband and
Wife, Appellants,

v.

Andrew PARKER, Appellee.

No. 24A01–1102–CT–24.

Court of Appeals of Indiana.

Oct. 25, 2011.

Paul S. Petro, R.T. Green, Blackburn & Green, Karl L. Mulvaney, Shannon D. Landreth, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants.

Dennis E. Harrold, Kyle M. Baker, Brett J. Haacker, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Donald K. Haire and Julie A. Haire appeal the trial court's order granting summary judgment to Andrew Parker. The Haires raise three issues, which we revise and restate as whether the trial court erred in granting Parker's motion for summary judgment. We reverse and remand.

The relevant facts as designated by the parties follow.[1] On March 28, 2009, Donald, Parker, and others went to Haspin Acres, an off road vehicle and motorcycle park located in Laurel, Indiana. Before entering Haspin Acres, Donald paid a fee and signed a Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement (the "Release"), which states:

**RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT**

| Description and Location of Scheduled Event(s) | Date of Release Signed |
| --- | --- |

To some extent all motor vehicles are potentially dangerous. The participants should take part in motor vehicle events based on their own abilities. Regardless of state law, Haspin Acres strongly urges the participant to wear a helmet and other appropriate safety apparel. Haspin also urges participants to receive professional instruction before operating any motor vehicle.

Haspin does not provide medical insurance. We urge all participants not to operate their vehicle without personal medical coverage.

Any participant who: prior to starting an event doubts their ability to participate in an event, feels they have not adequately prepared themselves and their equipment, questions the safety

---

1. Some of the facts are taken from the complaint which was designated by both Parker and the Haires and are not contested. *See Lean v. Reed,* 876 N.E.2d 1104, 1106 n. 1 (Ind.2007) (addressing the grant of summary judgment and noting that certain facts were taken from the complaint which was designated by the movant pursuant to Trial Rule 56(C) and not contested).

or condition of the facility, believes their personal insurance coverages are not adequate to cover them for any loss that might occur; are urged to notify the management who will immediately refund their entry fee.

In consideration of permission to enter for any purpose the NON–PUBLIC AREA (defined as any area to which admission is not open to the general public, including but not limited to pit areas, judging areas, special promotion areas, racing surfaces, walkways, official's and participants' areas, etc.) of the above location, and/or in further consideration of permission to observe and/or participate in the above described meet in any capacity whatsoever, I hereby understand and agree as follows:

1.  I RELEASE, DISCHARGE AND AGREE NOT TO SUE THE HASPIN ACRES MOTORPARK, its officers, trustees, employees and agents, meet officials, promoters, sponsors, motorcycle owners, riders, mechanics and pit crew and owners and lessees of premises used in connection with the meet, and each of their respective employees and agents, from all claims, demands, actions, causes of action, liability loss or injury (including death) of whatsoever kind, nature or description that may arise to my person and property, in any way resulting from or arising in connection with the above-described meet while I am in the NON–PUBLIC AREA.

2.  I ASSUME FULL RESPONSIBILITY FOR AND THE RISK OF loss, damage or injury (including death) of whatsoever kind, nature or description that may arise to my person and property notwithstanding any negligence of the HASPIN ACRES REC PARK, its officers, trustees, employees and agents, meet officials, promoters, sponsors, motorcycle owners, riders, mechanics and pit crew, and owners and lessees of premises used in connection with the meet, and each of their respective employees and agents, while I am for any reason in the NON–PUBLIC AREA voluntarily and upon reliance of my own judgment and ability and knowledge of the risks and hazards to myself and property while entering, upon departing such area.

3.  I INDEMNIFY AND HOLD HARMLESS the HASPIN ACRES REC PARK, its officers, trustees, employees, and agents, meet officials, promoters, sponsors, motorcycle owners, riders mechanics and pit crew, and owners and lessees of premises used in connection with the damage, or cost each of them may incur due to my presence in the above-described NON–PUBLIC AREA.

4.  THIS RELEASE, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT SHALL BE BINDING UPON my heirs, administrators, executors and assigns.

If any portion of this RELEASE ASSUMPTION of RISK AND INDEMNITY AGREE-MENT is held invalid, the balance shall notwithstanding continue in full legal force and effect.

I HAVE READ AND VOLUNTARILY SIGN THIS RELEASE, ASSUMPTION OR RISK AND INDEMNITY AGREEMENT, AND I certify that no oral representation statements or inducements apart from the foregoing written agreement have been made.

Appellants' Appendix at 47.

At some point, Parker's ATV "rolled down" a hill and "tipped over." *Id.* at 143. Parker turned his ATV back over and started it as he stood beside it. "The throttle cable was stretched so [the ATV] took off." *Id.* at 65. Donald described the incident as follows:

At that time [Parker] stood to the side and started the machine. Jason was in front of it. I was to the rear, right wheel and [Parker] was on the, what I would call the driver, left side. Upon starting it the thing just took off. Jason was in front of it trying to stop it backing up to this embankment and I was at the right rear wheel trying to grab it

and scraped my arm on the tires 'cause they're gripping tires. And then the next thing I know I fell down, the machine went up this embankment and just come up in the air. It looked like it was ten feet in the air, came over and landed right on top of me. I pulled my knees up into the fetal position to take the brunt of the impact and I remember thinking this thing is on, turned on, moving sprockets or something. I need it off of me so when it hit me I, uhm, instinct just kicked my feet to get it off of me and it went tumbling, not tumbling.

*Id.* at 84. Parker later described the incident as follows:

Well, Nick rolled his four wheeler. Went down to help him out and once we got him back on his, his four wheeler back on his tires I went up to my four wheeler that had rolled down the hill and tipped over and I tipped mine back over. Looked at it for a second and, uh, talking with Jason. Started the four wheeler and it took off wide open and went up a hill, rolled down the hill. Donnie was standing in the middle of the hill. He never moved. The four wheeler hit him.... And before I continued down the hill and landing, landing upside down in some trees the four wheeler died. And then we, uh, rolled it back over, out of the trees it was then when we noticed that the throttle had been stretched from when it tipped over from before. It's got a rubber boot that goes over the throttle so even at the first sight we didn't even notice what happened.

*Id.* at 143. Donald sustained physical injuries.

On October 26, 2009, the Haires filed a complaint against Parker alleging that Parker was negligent which resulted in physical injuries and expenses to the Haires and that Julie lost the services and consortium of Donald. On December 18, 2009, Parker filed an answer setting out nine defenses. The Haires filed an amended complaint alleging that Donald was injured by Parker's actions and that Julie lost the services and consortium of Donald.

On June 2, 2010, Parker filed a motion for summary judgment alleging that the Haires' claims against Parker were explicitly barred as a result of Donald's execution of the Release. On October 6, 2010, the Haires filed a Cross–Motion for Partial Summary Judgment/Response to Defendant, Andrew Parker's, Motion for Summary Judgment and Designation of Evidence in Support Thereof. Parker filed a response and argued that he was entitled to summary judgment based upon the Release and based upon the idea that "participants in sporting events will not be permitted to recover against their co-participants for injuries sustained as the result of the inherent or foreseeable dangers of the sport." *Id.* at 117. The trial court granted Parker's motion for summary judgment and denied the Haires' motion for partial summary judgment.[2]

The issue is whether the trial court erred in granting Parker's motion for summary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary

---

2. The Haires appeal only the court's grant of Parker's motion for summary judgment.

judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied his day in court. *Id.* at 974. A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 975 (Ind. 2005). If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. *Id.* "An appellate court may affirm summary judgment if it is proper on any basis shown in the record." *Pfenning v. Lineman,* 947 N.E.2d 392, 408–409 (Ind.2011).

■■■ "In order to prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster,* 804 N.E.2d 736, 738 (Ind.2004). In negligence cases, summary judgment is "rarely appropriate." *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.* Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Id.* at 385.

## A. *The Release*

■■■ The parties disagree as to whether the Release signed by Donald applies to Parker. Generally, only parties to a contract or those in privity with the parties have rights under the contract.

*OEC–Diasonics, Inc. v. Major,* 674 N.E.2d 1312, 1314–1315 (Ind.1996). However,

> [o]ne not a party to an agreement may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Id.* at 1315 (internal citation omitted). The intent of the contracting parties to bestow rights upon a third party must affirmatively appear from the language of the instrument when properly interpreted and construed. *Id.* However, it is not necessary that the intent to benefit a third party be demonstrated any more clearly than the parties' intent regarding any other terms of the contract. *Id.*

■■■ "A release, as with any contract, should be interpreted according to the standard rules of contract law." *Huffman v. Monroe Cnty. Cmty. Sch. Corp.,* 588 N.E.2d 1264, 1267 (Ind.1992). "[R]elease documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *OEC–Diasonics, Inc.,* 674 N.E.2d at 1314 (quoting *Huffman,* 588 N.E.2d at 1267). Generally, "[i]nterpretation of a contract is a pure question of law and is reviewed de novo." *Dunn v. Meridian Mut. Ins. Co.,* 836 N.E.2d 249, 252 (Ind.2005). If its terms are clear and un-

ambiguous, courts must give those terms their clear and ordinary meaning. *Id.* Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. *Id.* "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Rogers v. Lockard,* 767 N.E.2d 982, 992 (Ind.Ct.App.2002). "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002), *reh'g denied.* "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." *Johnson v. Johnson,* 920 N.E.2d 253, 256 (Ind.2010).

The Release provided that Donald released, discharged, and agreed not to sue:

> THE HASPIN ACRES MOTORPARK, its officers, trustees, employees and agents, meet officials, promoters, sponsors, motorcycle owners, riders, mechanics and pit crew and owners and lessees of premises used in connection with the meet, and each of their respective employees and agents, from all claims, demands, actions, causes of action, liability loss or injury (including death) of whatsoever kind, nature or description that may arise to my person and property, in any way resulting from or arising in connection with the above-described meet while I am in the NON–PUBLIC AREA.

Appellants' Appendix at 47. The Release also listed the entities in the following paragraphs:

> I ASSUME FULL RESPONSIBILITY FOR AND THE RISK OF loss, damage or injury (including death) of whatsoever kind, nature or description that may arise to my person and property notwithstanding any negligence of the

HASPIN ACRES REC PARK, its officers, trustees, employees and agents, meet officials, promoters, sponsors, motorcycle owners, riders, mechanics and pit crew, and owners and lessees of premises used in connection with the meet, and each of their respective employees and agents, while I am for any reason in the NON–PUBLIC AREA voluntarily and upon reliance of my own judgment and ability and knowledge of the risks and hazards to myself and property while entering, upon departing such area.

*Id.*

The Haires argue that because "the plain language of the Release does not identify Parker by name or category, there is no affirmative intent to benefit Parker" and that Parker "does not have standing to enforce the Release." Appellants' Brief at 15. The Haires argue that "[t]he Release does not say it releases anybody who is on the property, nor does it say it releases the general public." *Id.* at 14. The Haires argue that "[t]he effect of the possessive 'its' controls the entire list, including 'riders,'" and that "[t]he express provision states 'its ... riders,' not *all* riders." *Id.*

Parker argues that he was a rider and that "the Release ... clearly states (without qualification) that Haire agreed to release, discharge and not sue, among other individuals and entities, all 'riders' at Haspin Acres, which clearly includes Parker who was likewise operating an ATV." Appellee's Brief at 9. Parker argues that:

> the Release Agreement intends for there to be a full stop read between the words 'agents' and 'meet officials', and it distinguishes those entities which are understood to be affiliated with Haspin Acres (Haspin Acres, its officers, its trustees, its employees and its agents) from those that are not affiliated with Haspin Acres (meet officials, promoters,

sponsors, motorcycle owners, riders, mechanics and pit crew, owners and lessees).

*Id.* at 10.

In their reply brief, the Haires argue:

This list begins with a modifier: a possessive. If the statement was, "These are John's carrots, beans, apples and oranges, fruit, kiwis, and pears," the pears would still be John's though 'apples and oranges' are listed before pears. The comma after 'apples and oranges' is not a period, it's a comma. They are still 'John's ... pears.' It is illogical to say otherwise. Also, the apples, oranges, kiwis, and pears are still John's though 'fruit' appears in the middle of the statement and is a term that overlaps the others.

Appellants' Reply Brief at 7.

▬▬▬ To the extent that the Haires argue that "the entire list of categories is controlled by the possessive 'its,'" we observe that the list includes "riders," "motorcycle owners," "mechanics and pit crew, and owners and lessees of premises," Appellants' Appendix at 47, and the plain language of the Release does not reveal whether these entities are or are not owned by or separate from Haspin Acres and such a conclusion is dependent upon

certain extrinsic facts. Further, even assuming that "its" applied to the entire list of categories as the Haires contend, we cannot say based upon the language of the Release whether, on the one hand, being a Haspin Acres' rider requires a certain type of relationship between the rider and Haspin Acres or, on the other hand, one of Haspin Acres' riders is merely a person in Parker's position, i.e., someone who went to Haspin Acres, stopped at the gate, went inside, showed them identification, signed a waiver, gave Haspin Acres money, and rode his ATV around Haspin Acres. We conclude that there is a question of fact as to whether Parker was a rider for purposes of the Release.[3] *See Cummins v. McIntosh,* 845 N.E.2d 1097, 1108 (Ind.Ct. App.2006) (holding that summary disposition was improper as there were factual issues regarding the scope and effect of a release), *trans. denied; see also Huffman,* 588 N.E.2d at 1267 (holding that contradictory references clouded the intent of the document, "parol evidence may be utilized to determine the parties' true intentions respecting the document's application," and that the entry of summary judgment must be reversed and the case remanded for a factual determination).

▬▬▬ The Haires also argue that Donald was not in a non-public area. The

---

**3.** Parker designated an affidavit of the manager of Haspin Acres which stated that the Release "applied to all people who entered the Park," "applied to all individuals, including those who were at the park for recreational riding," "applied to all claims and losses arising from use of recreational vehicles, while operating such vehicle on the Park's property," and "was not intended to apply only to individuals participating in a meet." Appellants' Appendix at 154. On appeal, Parker argues that "the parol evidence to this contract is clear: the release was intended to apply to all riders that entered the park." Appellants' Brief at 13. "In general, '[t]he parol evidence rule provides that extrinsic evidence is inadmissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are clear and unambiguous.'" *Evan v. Poe & Assocs., Inc.,* 873 N.E.2d 92, 101 (Ind.Ct.App.2007) (quoting *Cooper v. Cooper,* 730 N.E.2d 212, 215 (Ind.Ct.App.2000)). "However, under the stranger to the contract rule, 'the inadmissibility of parol evidence to vary the terms of a written instrument does not apply to a controversy between a third party and one of the parties to the instrument.'" *Id.* (quoting *Cooper,* 730 N.E.2d at 216). However, the statements in the affidavit do not explicitly address the ambiguities discussed above or Donald's intent in signing the Release, or provide that Parker is entitled to summary judgment.

Haires argue that "Haspin Acres is a large park of approximately 750 acres, most of which is open to the general public upon payment of the entrance fee" and that the Release "does not define the relevant area as anywhere and everywhere on the 750 acres." Appellants' Brief at 17. The Haires argue that for the Release to operate, Haire must be in the "nonpublic area," and that "[t]he relatively few areas defined as non-public are tied to organized races, or, as contemplated by the Release, 'Scheduled Event(s).'" *Id.* at 17–18.

In his motion for summary judgment, Parker cited Plaintiff's Response to Request for Admission No. 9 and alleged that the Release Agreement was applicable because Donald "admits that he was injured in an area that was not open to the general public, as it is undisputed that he was required to sign the Release Agreement and pay a fee before being allowed into the park." Appellants' Appendix at 34–35. On appeal, Parker again cites to Plaintiff's Response to Request for Admission No. 9 and argues that "Haire admits that he was injured in an area that was not open to the general public, as it is undisputed that he was required to sign the Release Agreement and pay a fee before being allowed into the park." Appellee's Brief at 12. Without citation to the record, Parker also argues that "the Release's 'non-public area' definition includes 'participants' areas,' which definition clearly applies to Haire and his location at the time of the occurrence." *Id.*

Plaintiff's Response to Request for Admission No. 9 states:

9. Donald K. Haire was required to sign the "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement," (a copy of which is attached as Exhibit A) and pay a fee, before entering the area where the inci-

dent complained of in the Complaint occurred.

***RESPONSE :***

Admit that Mr. Haire signed the "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" ("Agreement") and paid a fee before entering Haspin Acres on the day of the incident. However, Plaintiff disputes that the area where the incident occurred qualifies as a "Non–Public Area" as defined by the "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" ("Agreement"). The Agreement defines a "Non–Public Area" as: "any area to which admission is not open to the general public, including, but not limited to, pit areas, judging areas, special promotion areas, racing surfaces, walkways, officials' and participants' areas, etc." Mr. Haire disputes that he was in a "Non–Public Area" as defined by the Agreement. Moreover, the Agreement's language is limited to "participants" in official "events" or "meets" organized by or for Haspin Acres. Mr. Haire was not participating in an organized and/or official event and/or meet at the time of the incident.

Appellants' Appendix at 52–53. We cannot say that Donald's response to Request No. 9 reveals that he admits that he was injured in an area that was not open to the general public. Further, Request No. 8 and Donald's response to Request No. 8 state:

8. The incident complained of in the Complaint occurred in a NON-PUBLIC AREA at Haspin Acres, meaning it occurred in an area that was not open to the general public.

***RESPONSE:***

Deny. Mr. Haire disputes that the area where the incident occurred qualifies as a "Non–Public Area" as defined by the "Release and Waiver of Liability, As-

sumption of Risk and Indemnity Agreement" ("Agreement"). The Agreement defines a "Non–Public Area" as: "any area to which admission is not open to the general public, including, but not limited to, pit areas, judging areas, special promotion areas, racing surfaces, walkways, official's and participants' areas, etc." The area where the incident occurred was not of the same type as those areas included within the definition of a "Non–Public Area" contained in the Agreement. Moreover, the Agreement's language is limited to "participants" in "events" or "meets" organized by or for Haspin Acres. Mr. Haire was not participating in an organized and/or official event and/or meet at the time of the incident.

*Id.* at 51–52. We cannot say based upon the designated evidence and as a matter of law that the incident occurred in a Non–Public Area.

Lastly, the Haires argue that Donald "must be a participant" and "participate in a 'scheduled event'" for the Release to apply. Appellants' Brief at 15. The Haires argue that "both 'event' and 'meet' should be interpreted harmoniously to mean an organized sporting competition, which is very different from the informal, recreational weekend of ATV trail-riding Haire and Parker anticipated." *Id.* at 17. The Haires point to the fact that the Release contains a blank area provided for the "Description and Location of Scheduled Event(s)." Appellants' Brief at 15 (quoting Appellants' Appendix at 26). The Haires also point to the following statement in the Release: "Any participant who: prior to starting an event doubts their ability to participate in an event. . . ." *Id.* (quoting Appellants' Appendix at 26). Parker argues that "an examination of the actual language of the contract reveals plain, unambiguous language that clearly states the intention of the parties, and

which does not require any of the creative interpretation that the Appellants provide." Appellee's Brief at 11. Based upon the language in the Release, we cannot say that the Release requires that Donald be a participant in a scheduled event or meet.

In summary, we conclude that issues of fact exist as to whether Parker was a rider within the terms of the Release and whether Donald was in a non-public area at the time of the incident. Accordingly, the court erred in granting Parker's motion for summary judgment.

## B. *Negligence*

The Haires argue that "[t]he doctrine of inherent risk does not apply to this case because non-competitive, recreational ATV usage is not an organized sport." Appellants' Brief at 20. Parker cites *Pfenning v. Lineman,* 947 N.E.2d 392 (Ind. 2011), and argues that he is entitled to summary judgment because "there has been absolutely no facts alleged that would suggest that Parker acted outside of the scope of ordinary behavior for a person participating in an ATV activity." Appellee's Brief at 15. In their reply brief, the Haires argue that *Pfenning* "does not change the conclusion that casual, recreational ATV usage still is not an organized sport" and that "common-law negligence principles apply here." Appellants' Reply Brief at 13. The Haires also argue that "[u]nder the *Pfenning* analysis, there must still be an organized sport, not merely a recreational activity." *Id.* Lastly, the Haires contend that "[b]ecause recreational ATV usage is not an organized sport, and because there is no way to ascertain reasonableness as a matter of law, the inherent risk doctrine does not apply." *Id.* at 14.

In *Pfenning,* Cassie Pfenning was injured by a golf ball at a golf outing when

she was sixteen years old. 947 N.E.2d at 396. Specifically, Pfenning drove a beverage cart and after making several trips around the golf course "was suddenly struck in the mouth by a golf ball while driving the beverage cart on the cart path approaching the eighteenth hole's tee pad from its green." *Id.* at 397. The ball was a low drive from the sixteenth tee approximately eighty yards away. *Id.* The golfer's drive traveled straight for approximately sixty to seventy yards and then severely hooked to the left. *Id.* The golfer noticed the roof of another cart in the direction of the shot and shouted "fore." *Id.* But neither the plaintiff nor her beverage-serving companion heard anyone shout "fore." *Id.* After hearing a faint yelp, the golfer ran in the direction of the errant ball and discovered the plaintiff with injuries to her mouth, jaw, and teeth. *Id.*

Pfenning brought an action against Joseph E. Lineman, the golfer who hit the ball that struck her. *Id.* at 396. Lineman sought summary judgment on grounds that he could not be held liable under a negligence theory because the plaintiff was a co-participant in the sporting event, and her injuries resulted from an inherent risk of the sport. *Id.* at 398. The trial court granted summary judgment in favor of the defendant. *Id.* at 396. On appeal, the Indiana Supreme Court "reject[ed] the concept that a participant in a sporting event owes no duty of care to protect others from inherent risks of the sport," but adopted "instead the view that summary judgment is proper when the conduct of a sports participant is within the range of ordinary behavior of participants in the sport and therefore is reasonable as a matter of law." *Id.* at 396.

The Court held:

We conclude that sound judicial policy can be achieved within the framework of existing Indiana statutory law and jurisprudence. As noted previously, there are three principal elements in a claim for negligence: duty, breach of duty, and a proximately caused injury. When there is no genuine issue of material fact and any one of these elements is clearly absent, summary judgment is appropriate. *Colen v. Pride Vending Serv.,* 654 N.E.2d 1159, 1162 (Ind.Ct. App.1995), *trans. denied.* But rather than focusing upon the inherent risks of a sport as a basis for finding no duty, which violates Indiana statutory and decisional law, the same policy objectives can be achieved without inconsistency with statutory and case law by looking to the element of breach of duty, which is determined by the reasonableness under the circumstances of the actions of the alleged tortfeasor. Breach of duty usually involves an evaluation of reasonableness and thus is usually a question to be determined by the finder of fact in negligence cases. *Kroger Co. v. Plonski,* 930 N.E.2d 1, 9 (Ind.2010); [*N. Ind. Pub. Serv. Co. v.*] *Sharp,* 790 N.E.2d [462, 466 (Ind.2003) ]. But in cases involving sports injuries, and in such cases only, we conclude that a limited new rule should apply acknowledging that reasonableness may be found by the court as a matter of law. As noted above, the sports participant engages in physical activity that is often inexact and imprecise and done in close proximity to others, thus creating an enhanced possibility of injury to others. The general nature of the conduct reasonable and appropriate for a participant in a particular sporting activity is usually commonly understood and subject to ascertainment as a matter of law.

*Id.* at 403–404. The Court held that "in negligence claims against a participant in a sports activity, if the conduct of such participant is within the range of ordinary behavior of participants in the sport, the conduct is reasonable as a matter of law and does not constitute a breach of duty."

*Id.* at 404. In any sporting activity, however, a participant's particular conduct may exceed the ambit of such reasonableness as a matter of law if the participant either intentionally caused injury or engaged in reckless conduct. *Id.* Such intentional or reckless infliction of injury may be found to be a breach of duty. *Id.* The Court concluded that "[a]s to the golfer's hitting an errant drive which resulted in the plaintiff's injury, such conduct is clearly within the range of ordinary behavior of golfers and thus is reasonable as a matter of law and does not establish the element of breach required for a negligence action." *Id.*

Here, even assuming that this case is one "involving sports injuries," we cannot say that the "general nature of the conduct reasonable and appropriate for a participant" in ATV riding "is usually commonly understood and subject to ascertainment as a matter of law." *Id.* at 403–404. Specifically, we cannot say as a matter of law and Parker does not direct our attention to any designated evidence suggesting that his conduct of starting his ATV while standing beside it after the ATV had "tipped over" was conduct within the range of ordinary behavior of participants in the sport and reasonable as a matter of law. Appellants' Appendix at 143. Accordingly, we conclude that an issue of fact exists as to whether Parker's actions constituted a breach of duty and that the trial court erred in granting Parker's motion for summary judgment.

For the foregoing reasons, we reverse the trial court's grant of Parker's motion for summary judgment.

Reversed and remanded.

BAKER, J., and KIRSCH, J., concur.