

FILED

Mar 15 2018, 7:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEES |
| Kevin P. Podlaski | *Attorney for Melissa Bermudez* |
| Nicholas A. Podlaski | William A. Ramsey |
| Beers Mallers Backs & Salin, LLP | Barrett McNagny, LLP |
| Fort Wayne, Indiana | Fort Wayne, Indiana |
| | *Attorneys for Progressive Southeastern Insurance Company* |
| | J. Blake Hike |
| | Michael C. Ross |
| | Carson Boxberger, LLP |
| | Fort Wayne, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Dulworth, | March 15, 2018 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 02A05-1707-PL-1556 |
| v. | Appeal from the Allen Superior Court |
| Melissa Bermudez and Progressive Southeastern Insurance Company, | The Honorable Craig J. Bobay, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 02D02-1608-PL-398 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Eric Dulworth (Dulworth), appeals the trial court's summary judgment in favor of Appellees-Defendants, Melissa Bermudez (Bermudez) and Progressive Southeastern Insurance Company (Progressive), on Dulworth's Complaint for damages arising out of a vehicle collision.

We affirm.

# ISSUES

Dulworth presents us with four issues on appeal, which we consolidate and restate as the following two issues:

  (1) Whether the trial court properly concluded that, as a matter of law, Bermudez was released under the terms of the Release Agreement executed between Dulworth and Charity Cherneski, even though Bermudez was not a party to the Release Agreement; and
  (2) Whether the trial court properly concluded that, as a matter of law, Dulworth is barred from pursuing underinsured motorist benefits from Progressive.

# FACTS AND PROCEDURAL HISTORY

On August 22, 2014, Dulworth was involved in a motor vehicle accident on West Jefferson Boulevard, in Fort Wayne, Indiana. Approaching the intersection with Webster Street, Bermudez came to a sudden stop. Dulworth, who was driving behind Bermudez, stopped but Charity Cherneski (Cherneski),

who was following Dulworth, failed to brake in time. Cherneski collided with Dulworth's vehicle, causing property damage and bodily injury.

[5] On August 1, 2016, Dulworth resolved his bodily injury claim against Cherneski by entering into a Release of All Claims (Release), with Cherneski and her automobile insurer, Founders Insurance Company (Founders). This Release stated, in pertinent part:

> KNOW ALL MEN BY THESE PRESENTS: That the undersigned, being of lawful age, for the sole consideration of Twenty-five thousand and 00/100 ($25,000.00), to the undersigned in hand paid, receipt whereof is hereby acknowledged, do/does hereby and for my/our/its heirs, executors, administrators, successors, and assigns release, acquit and forever discharge Charity Cherneski and Founders Insurance Company and his, her, their, or its agents, servants, successors, heirs, executors, administrators, and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which the undersigned now has/have or which may hereafter accrue on account of or in any way growing our of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 22nd day of August 2014, at or near Jefferson Street, Fort Wayne, Indiana.
>
> It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefore and intend merely to avoid litigation and buy their peace.

* * * *

This Release expressly reserves all rights of the person, or persons, on whose behalf the payment is made and the rights of all persons in privities or connected with them, and reserves to them their right to pursue their legal remedies, if any, including but not limited to claims for contribution, property damage and personal injury against the undersigned or those in privities or connected with the undersigned.

(Appellant's App. Vol. II, p. 32).

[6] On August 22, 2016, after settling his claim against Cherneski, Dulworth filed his Complaint for damages against Bermudez, alleging that Bermudez negligently caused or contributed to the collision by making an unwarranted stop. In addition, Dulworth sought to recover underinsured motorist (UIM) benefits from Progressive, under a policy with benefit limits in the amount of $100,000 to $300,000. To qualify for these UIM benefits, the policy provides:

We will pay under this Part III [Uninsured/Underinsured Motorist Coverage] only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements. An insured person must notify us of any bona fide offer of agreement or settlement with the owner or operator of an underinsured motor vehicle and must provide certification of the limits of liability of the underinsured motorist.

(Appellant's App. Vol III, p. 18).

On February 9, 2017, Bermudez filed her motion for summary judgment, together with a memorandum in support thereof, and designation of evidence. On March 13, 2017, Dulworth filed a response to Bermudez's motion, as well as a motion to strike. The following day, Progressive filed its motion for summary judgment, to which Dulworth replied on May 8, 2017. On April 21, 2017 and April 24, 2017, Bermudez and Progressive, respectively, each filed their own motion to strike. On May 17, 2017, the trial court conducted a hearing on Bermudez's and Progressive's motions for summary judgment and associated motions to strike. On June 7, 2017, the trial court entered summary judgment in favor of Bermudez and Progressive, concluding, in pertinent part:

> The Release in the present case is not analogous to that evaluated in *Bank One* [*v. Surber*, 899 N.E.2d 693 (Ind. Ct. App. 2009)], and that the present Release unambiguously operates as a release of everyone, without limitation. Therefore, extrinsic evidence may not be introduced in an attempt to qualify the plain meaning of the words as they appear in the four corners of the document. As the agreement at issue is a Release, the case law also makes clear that no privity is required for this document to operate in favor of third parties, and the Stranger to the Contract Rule is not an exception to the bar against extrinsic evidence.
>
> * * * *
>
> The [c]ourt agrees that a reading of the plain language of the Policy indicates that since Bermudez was released without payment [], Bermudez's bodily injury limits were not exhausted. As Dulworth did not abide by the Policy language, Dulworth is not entitled to recover UM/UIM benefits from Progressive. The [c]ourt concludes there are no genuine issues of material fact regarding Progressive's liability, and that Dulworth cannot

sustain an action against Progressive for UIM benefits. Therefore, entry of summary judgment in favor of Progressive is proper.

(Appellant's App. Vol. II, pp. 28, 30).

Dulworth now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

### I. *Standard of Review*

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607. When the defendant is the moving party, the defendant must show that the

undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *The Release*

Dulworth contends that the Release is unambiguous and only released Cherneski and Founders and therefore does not bar his claim against Bermudez. Generally, only parties to a contract or those in privity with the parties have rights under the contract. *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314-15 (Ind. 1996). However,

> [o]ne not a party to an agreement may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third

party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Id.* (internal citation omitted). The intent of the contracting parties to bestow rights on a third party must affirmatively appear from the language of the instrument when properly interpreted and construed. *Id.* It is not necessary that the intent to benefit a third party be demonstrated any more clearly than the parties' intent regarding any other terms of the contract. *Id.*

[12] "A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well." *Evan v. Poe & Associates, Inc.*, 873 N.E.2d 92, 98 (Ind. Ct. App. 2007) (citing *Huffman v. Monroe Co. Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992)). "A release, as with any contract, should be interpreted according to the standard rules of contract law." *Evan*, 873 N.E.2d at 98. "[R]elease documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *OEC-Diasonics, Inc.*, 674 N.E.2d at 1314. A contract is ambiguous only if a reasonable person could find its terms susceptible to more than one interpretation. *Evan,* 873 N.E.2d at 98. Where "a contract is unambiguous, the intent of the parties should be determined by the language employed in the document." *Id.* Thus, if the contract is ambiguous, "we give effect to the intentions of the parties as expressed in the four corners of the documents." *Id.* We will neither construe clear and unambiguous provisions

nor add provisions not agreed upon by the parties. *Id.* The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone. *Id.*

[13] While the Release contains language purportedly discharging "all other persons," Dulworth maintains this is a general term "restricted to that class, or types of persons, and encompasses any other persons related by blood or legal right to Cherneski and/or Founders not specifically, previously named." (Appellant's Br. p. 16). Bermudez and Progressive, on the other hand, both maintain that the unambiguous language of the Release intended to release "all other persons" without restrictions, in the absence of any limiting provisions. In support of their respective positions, the parties rely on the same precedents.

[14] Dulworth centers his argument on *Bank One, Nat. Ass'n. v. Surber*, 899 N.E.2d 693, 703 (Ind. Ct. App. 2009), *trans. denied*, in which we found that contradictory language in the release prevented the release of "all other persons." *Bank One* involved an argument between a widow and the decedent's daughters over estate funds which were held in the decedent's bank account. *Id.* at 697. Because the bank could not locate the widow's signatory card giving her authorization to be on the decedent's account, the bank deemed the account the sole property of the decedent. *Id.* The dispute was eventually settled through a mediated settlement agreement and subsequent release. *Id.* at 698. Thereafter, the widow brought a claim against Bank One for negligence, and

Bank One, relying on the release, argued the agreement released it from liability. *Id*. The release contained the following paragraph:

> [Widow], [decedent's daughters], and the Estate of [the decedent] (hereinafter 'Signatories'), conditioned upon and for and in consideration of the [c]ourt's approval of and the performance of the Compromise, the sufficiency of which is hereby acknowledged, hereby forever release and discharge each other, their heirs, personal representatives, attorneys, agents and assigns, and all other persons or entities who might be liable, not of whom admit any liability to the Signatories, but all dispute any liability to the Signatories, of and from any and all manner of actions, causes of action, suits, accounts, contracts, debts, claims, and demands whatsoever, at law or in equity, and however arising, on or before the date of this release, including but not limited to, all matters asserted, or which could have been asserted, by and of the Signatories in that certain actions pending in the Hamilton Superior Court, State of Indiana, as above entitled under Cause No. [].

*Id*. Finding that the release contained language contradicting the general statement of "all other persons or entities who might be liable . . ." this court focused on the multiple ambiguities included in the paragraph. *Id*. at 702. The release specifically referenced the Signatories when limiting its applicability to claims "asserted, or which could have been asserted" and "any and all disputes" existing "between the Signatories." *Id*. The Release also explicitly referenced the cause number identifying the case in which the Signatories to the release were litigating their dispute. *Id*. Accordingly, given the contradictory provisions, we concluded that the Signatories intended to limit the release to the

pending litigation over the decedent's estate and did not release Bank One from liability. *Id*. at 703.

[15] Bermudez and Progressive refer this court to our decision in *Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92 (Ind. Ct. App. 2007), where we construed a settlement agreement as barring claims against the defendant, who was not specifically named in the release. This specific release stated, in pertinent part:

> [] [Evan] do hereby release, acquit and forever discharge the Safeco Insurance Co. of America, and [its Attorneys], their representative agents, employees, representatives, attorneys, heirs, executors, administrators, successors and assigns, together with all other persons, firms and corporations, from any and all claims for damages, costs, expenses and compensations, including but not limited to any claim for breach of a duty of good faith and fair dealing or for punitive damages, whatsoever at law or in equity, and however arising, on account of, or in any way growing out of the issuance of Safeco Insurance Policy [] to [Evan], and/or a fire loss which occurred on February 12, 2001 at []; and damages and losses for which the parties hereby released are legally liable, all of which is denied and disputed by them.

*Id*. at 96. Interpreting the release to be unambiguous, the *Evan* court noted that the instrument did not contain any limitations of claims or other language that contradicted the notion that "all other persons" were released. *Id*. at 101. While the document did contain a policy number, the court did not find that this reference limited the expansive language of "all other persons." *Id*. Accordingly, the court held that the release clearly and unambiguously released the world. *Id*.

[16] We find *Evan* more persuasive to the facts at hand. By executing the Release, Dulworth did not only release Cherneski and her insurer, but also "all other persons, firms, corporations, associations, or partnerships." (Appellant's App. Vol. II, p. 32). Even though the Release initially references the release of Cherneski, Founders, and their agents, servants, successors, heirs, executors, and administrators, the instrument then, without any limiting language, also releases "all other persons, . . . from any and all claims, actions, . . ." (Appellant's App. Vol. II, p. 32). Unlike *Bank One*, the instrument here simply does not contain any recitation of 'affected parties' or any other constricting language. *See Bank One*, 899 N.E.2d at 698. Despite the fact that the Release includes the claim number and policy number in the top right corner of the document, these references are not tied to the releasing language and cannot function as a limiting factor. Rather, we agree with the trial court, that based on their location, these indicators merely represent "a record-keeping device, not as a statement of release limitation." (Appellant's App. Vol. II, p. 28). Furthermore, the Release preserves the rights of Cherneski and Founders to pursue other claims related to the accident, but includes no such provisions that reserves Dulworth's rights with respect to other claims related to the accident.

[17] Dulworth now argues that the stranger to the contract rule exception applies and that his affidavit, expressing his intent not to release Bermudez and Progressive must be considered. In general, "[t]he parol evidence rule provides that extrinsic evidence is inadmissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are clear and unambiguous."

*Cooper v. Cooper*, 730 N.E.2d 212, 215 (Ind. Ct. App. 2000). However, under the stranger to the contract rule, "the inadmissibility of parol evidence to vary the terms of a written instrument does not apply to a controversy between a third party and one of the parties to the instrument." *Id*. at 216. Accordingly, as the parol evidence rule does not apply to this controversy due to the stranger to the contract exception, we must determine whether, in light of the unambiguous nature of the release, extrinsic evidence allowed under the stranger to the contract exception should be considered.

[18] In *Huffman*, our supreme court abolished the common law rule that the release of one joint tortfeasor released all other tortfeasors. *Huffman,* 588 N.E.2d at 1267. The court reasoned that a rule which assumed total release did not give appropriate deference to the parties' intent. To remedy this failing, the court held that a release should be interpreted like any other contract "with the intent of the parties regarding the purpose of the document governing." *Id*. In applying this new rule, the court stated:

> The release document in this case cannot be said to be 'clear and unambiguous on its face . . . These contradictory references [between the first and second paragraph of the release document] cloud the intent of the document. Consequently, parol evidence may be utilized to determine the parties' true intention respecting the documents' application.

*Id*. Accordingly, in the absence of ambiguity, *Huffman* does not require or permit us to look beyond the language of the release. *Id*. *See also Evan*, 873 N.E.2d at 103 (in the context of a controversy that exists between a third party

and one of the parties to the instrument, when a release is unambiguous we need not look at any other evidence to determine the parties' intent."); *Bank One*, 899 N.E.2d at 703 (finding the release to be ambiguous, the court considered extrinsic evidence). As we determined the Release between Dulworth and Cherneski to be unambiguous, we establish the intent of the Release from the four corners of the instrument and cannot consider extrinsic evidence.[1]

[19] Accordingly, "[l]anguage which releases 'all persons' does just that and is clear as long as no other terms are contradictory." *Dobson v. Citizen Gas & Coke Util.*, 634 N.E.2d 1343, 1345 (Ind. Ct. App. 1994). The location of the clause "[a]ll other persons" in the Release mirrors its location in other releases, which were determined by this court to have released the world. *See, e.g., Stemm v. Estate of Dunlap*, 717 N.E.2d 971, 976 (Ind. Ct. App. 1999) (in which the releasor executed a release discharging "Arnold Ray Rivera[,] [his] heirs, administrators, executors, successors and assigns, and all other persons and organizations"), *reh'g denied*. Here, Dulworth "affirmatively intended to release" Bermudez based in the language of the instrument. *See Kirtley v. McClelland*, 562 N.E.2d 27, 37 (Ind. Ct. App. 1990) ("One not a party to an

---

[1] Even if we were to hold otherwise and determine that extrinsic evidence may be considered in the dispute between Dulworth, on the one hand, and Bermudez and Progressive, on the other, even when the Release is unambiguous, we would reach the same result. In support of his argument to utilize extrinsic evidence, Dulworth encourages us to consider his affidavit that was designated evidence with his motion for summary judgement. However, the trial court in its Order struck Dulworth's affidavit in response to Bermudez's motion to strike. As Dulworth did not appeal the trial court's grant of Bermudez's motion, the affidavit is not before this court.

agreement may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor."), *trans. denied*. Therefore, there remain no genuine issues of material fact and we affirm the trial court's summary judgment in favor of Bermudez.

### III. *The Pursuit of UIM Benefits from Progressive*

[20] With respect to Progressive, Dulworth contends that Progressive's subrogation rights under the policy were not foreclosed because Dulworth's duty to notify Progressive was never triggered.

[21] In light of the all-encompassing language of the Release, Dulworth can no longer pursue his claim, if any, against Progressive. If Dulworth had wished to preserve his claim against Progressive, he was free to do so; however, he did not. *See Estate of Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269, 1275 (Ind. Ct. App. 2001) ("If a litigant wishes to settle a claim against some defendants without releasing other defendants, an appropriately drafted release or a general release accompanied by a stipulation signed by all parties will allow a litigant to do just that.").

[22] Notwithstanding the inclusive language of the Release, even if Progressive had not been released under the instrument, Dulworth would still be barred from pursuing a claim against the insurance company. Dulworth's policy with Progressive required Dulworth to exhaust all applicable injury liability bonds and policies by payment of judgment or settlement in order to qualify for UIM benefits. As Dulworth admitted that he failed to recover any sums from

Bermudez, whom he claimed to be at fault for the accident, in satisfaction of his claim, he breached the policy and is barred from pursuing UIM benefits from Progressive. Furthermore, under the terms of the policy, Dulworth was required to notify Progressive of any bona fide offer of agreement or settlement. Dulworth never notified Progressive of the Release prior to its execution and prior to releasing Bermudez of any further litigation. *See Hockelberg v. Farm Bureau Ins. Co.*, 407 N.E.2d 1160, 1161 (Ind. Ct. App. 1980) (where the insured releases his right of action against the wrongdoer before settlement with the insurer, the release destroys by operation of law the insured's right of action on the policy). Therefore, there are no genuine issues of material fact remaining regarding Progressive's liability under the policy and the trial court properly entered summary judgment in favor of the insurance company.

# CONCLUSION

Based on the foregoing, we hold that the trial court properly entered summary judgment as a matter of law in favor of Bermudez and Progressive.

Affirmed.

Robb, J. and Pyle, J. concur