[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/28/99
THOMAS K. KAHN
CLERK

No. 98-6699

_____

D. C. Docket No. CV-98-AR-1321-E

MS DEALER SERVICE CORP.,

Plaintiff-Appellant,

versus

SHARON D. FRANKLIN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 28, 1999)**

Before BARKETT, Circuit Judge, KRAVITCH and MAGILL*, Senior Circuit Judges.

_____

*Honorable Frank J. Magill, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

MAGILL, Senior Circuit Judge:

MS Dealer Service Corporation ("MS Dealer") appeals from the dismissal of its petition to compel Sharon Franklin to participate in arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16. We reverse.

**I.**

In May 1996 Sharon Franklin and Jim Burke Motors, Inc. ("Jim Burke") executed a "Buyers Order," whereby Franklin contractually agreed to purchase a vehicle from Jim Burke. The Buyers Order incorporates by reference a "Retail Installment Contract," in which Franklin is charged $990.00 for a service contract through MS Dealer. The Buyers Order contains an arbitration clause, providing that "BUYER HEREBY ACKNOWLEDGES AND AGREES THAT ALL DISPUTES AND CONTROVERSIES OF EVERY KIND AND NATURE BETWEEN BUYER AND JIM BURKE MOTORS, INC. ARISING OUT OF OR IN CONNECTION WITH THE PURCHASE OF THIS VEHICLE WILL BE RESOLVED BY ARBITRATION . . . ." Buyers Order at 1. The Buyers Order also provides that "[a]ll disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract . . . shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act . . . ." Id. at 2. This includes "any claim alleging fraud in fact [or] fraud in the inducement." Id. MS Dealer was not a signatory to either the Buyers Order or the Retail Installment Contract.

After taking possession of the vehicle, Franklin discovered several defects in the car. She then filed suit in Alabama state court against Jim Burke, MS Dealer and Chrysler Credit Corporation (the assignee of the Retail Installment Contract), asserting claims for breach of

2

contract, breach of warranty, fraud and conspiracy.  All of her claims against MS Dealer arise out of the $990.00 charge identified in the Retail Installment Contract for the service contract. According to her complaint, MS Dealer improperly cooperated, conspired and otherwise colluded with Jim Burke and Chrysler Credit Corporation in a scheme to defraud her in connection with the purchase of the service contract.  She alleges that the $990.00 charge was excessive and that the defendants conspired to charge this excessive amount so that they could each profit from the sale of the service contract by divvying up the excess amount.  She also alleges that this excessive charge required her to borrow an inflated amount of money in order to purchase the car and, thus, incur excessive interest expenses on her car loan.

Relying on the Federal Arbitration Act ("FAA") and the arbitration clause in the Buyers Order, MS Dealer filed the instant petition in federal district court to compel Franklin to arbitrate her claims against it.[1]  The district court originally granted the petition.  On reconsideration, however, the district court dismissed the petition on the ground that MS Dealer was not a signatory to the Buyers Order and, thus, did not have standing to compel arbitration.  MS Dealer appeals.

## II.

As an initial matter, Franklin contends that the district court lacked subject matter jurisdiction to consider MS Dealer's petition to compel arbitration.  We disagree.

The parties agree that "there must be diversity of citizenship or some other independent basis for federal jurisdiction before [an order compelling arbitration] can issue." Moses H. Cone

---

[1]Jim Burke filed a motion in state court to compel Franklin to arbitrate her claims against it, and the state court granted that motion.

Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983). Here, MS Dealer premised federal jurisdiction on diversity of citizenship between itself and Franklin. See 28 U.S.C. § 1332. In its petition to compel arbitration, MS Dealer alleges, and Franklin does not dispute, that (1) the petitioner, MS Dealer, is a corporation organized under the laws of Mississippi and having its principal place of business in Mississippi, (2) the respondent, Franklin, is a citizen of Alabama, and (3) the amount in controversy exceeds $75,000.00. "That plainly satisfies 28 U.S.C. § 1332's demands." First Franklin Fin. Corp. v. McCollum, 144 F.3d 1362, 1363 (11th Cir. 1998).

Notwithstanding this complete diversity between the parties named in the petition, Franklin contends that diversity jurisdiction is lacking because Jim Burke is named as a co-defendant in the state court action and the state court action is not removable due to Jim Burke's Alabama citizenship. "We disagree. As a matter of both § 1332's language and common sense, whether another action is removable or not does not affect jurisdiction in this, an independent action" to compel arbitration. Id. While acknowledging that the McCollum court has already specifically considered and rejected the argument Franklin raises here,[2] she asks us to modify or reverse that case. We decline that request. See Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998) ("We are bound to follow a prior panel or en banc holding, except where that

---

[2]Like Franklin, the plaintiff in McCollum filed a state court action against two co-defendants, only one of whom was diverse for the purpose of federal jurisdiction under § 1332. The diverse co-defendant filed a petition to compel arbitration in federal district court, naming only itself as the petitioner and the plaintiff as the respondent. The McCollum court found jurisdiction to entertain the petition to compel arbitration pursuant to the FAA even though the state court action could not be removed because of the non-diverse co-defendant. See 144 F.3d at 1363.

4

holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision.").

Alternatively, Franklin contends that diversity jurisdiction is lacking because Jim Burke is an "indispensable party," as that term is defined in Rule 19 of the Federal Rules of Civil Procedure, to the petition to compel arbitration. See Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 445 (2d Cir. 1995) ("As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure. Where joinder of a party would destroy subject matter jurisdiction, the court must dismiss the action if that party is 'indispensable' to the litigation."). She bases this argument on the fact that her state court complaint identifies Jim Burke and MS Dealer as coconspirators and joint tortfeasors. However, that mere fact does not render Jim Burke an indispensable party. See Temple v. Synthes Corp., 498 U.S. 5, 7 (1990) (per curiam) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. . . . The Advisory Committee Notes to Rule 19(a) explicitly state that 'a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.'" (citations omitted)); Herpich v. Wallace, 430 F.2d 792, 817 (5th Cir. 1970)[3] ("Rule 19, as amended in 1966, was not meant to unsettle the well-established authority to the effect that joint tortfeasors or coconspirators are not persons whose absence from a case will result in

---

[3]This Court has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

5

dismissal for non-joinder."); see also Pasco Int'l (London) Ltd. v. Stenograph Corp., 637 F.2d 496, 501 n.10 (7th Cir. 1980) (recognizing the "established principle" that coconspirators are not indispensable parties).

Moreover, we note that (1) an arbitrator has already ruled in favor of Jim Burke on all of Franklin's claims against it and (2) the state court has dismissed Franklin's claims against Jim Burke with prejudice. A party is "indispensable" only if he meets either of the threshold tests of Rule 19(a) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 19(b). That provision requires joinder

> if (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). In light of the binding ruling in favor of Jim Burke and its dismissal from the state court action with prejudice, Jim Burke is not an indispensable party with respect to Franklin's claims against MS Dealer.

Because complete diversity exists between MS Dealer and Franklin and because Jim Burke is not an indispensable party, we find that the district court properly exercised subject matter jurisdiction over MS Dealer's petition. We thus proceed to address the merits of the district court's decision denying the petition.

**III.**

The district court denied MS Dealer's petition to compel arbitration on the ground that MS Dealer was not a signatory to the Buyers Order. We review this decision de novo. See Kidd v. Equitable Life Assurance Soc'y of the United States, 32 F.3d 516, 518 (11th Cir. 1994).

In enacting the FAA, Congress demonstrated a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (internal quotation marks omitted). Therefore, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations." Moses H. Cone, 460 U.S. at 24. Notwithstanding this strong federal policy, however, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks omitted). As a general rule, therefore, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

"Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, this court has held that the lack of a written arbitration agreement is not an impediment to arbitration." Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756-57 (11th Cir. 1993). This is because "there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration." Id. at 757. A second exception exists when, "under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." Boyd v. Homes of Legend, Inc., 981

7

F. Supp. 1423, 1432 (M.D. Ala. 1997) (citing cases from Fourth and Sixth Circuits in support of proposition). A third "exception arises when the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract." Id. at 1429. MS Dealer contends that each of these exceptions is applicable in the present case.

Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. Sunkist Soft Drinks, 10 F.3d at 757. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[] out of and relate[] directly to the [written] agreement," and arbitration is appropriate. Id. at 758. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Boyd, 981 F. Supp. at 1433. Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976). Accordingly, we must scrutinize the nature of Franklin's claims against MS Dealer "to determine whether those claims fall within the scope of the arbitration clause contained in the [Buyers Order]." Sunkist Soft Drinks, 10 F.3d at 758.

Both of the circumstances giving rise to equitable estoppel exist here. Each of Franklin's claims against MS Dealer makes reference to and presumes the existence of the $990.00 charge contained in the Retail Installment Contract, which was incorporated by reference into the Buyers Order. Although Franklin does not allege that the service contract has been violated or breached in any way, each of her fraud and conspiracy claims depends entirely upon her contractual obligation to pay $990.00 for the service contract.[4]

Moreover, it is clear that Franklin's claims against Jim Burke and MS Dealer "are based on the same facts and are inherently inseparable." Id. at 757 (internal quotation marks omitted). Franklin alleges that MS Dealer conspired with Jim Burke and Chrysler Credit Corporation (which, like MS Dealer, was not a signatory to the Buyers Order) to engage in a scheme to defraud her by charging her excessive amounts for the service contract and inducing her to incur needless debt and corresponding interest expenses in connection with her purchase of the car. It is important to note that Franklin's obligation to pay the $990.00 charge arose under the Buyers Order and that she specifically alleges that MS Dealer worked hand-in-hand with Jim Burke and Chrysler Credit Corporation in this alleged fraudulent scheme. Her "allegations of such pre-arranged, collusive behavior establish[] that [her] claims against [MS Dealer are] intimately founded in and intertwined with the obligations imposed by the [Buyers Order]." Boyd, 981 F.

_____

[4]We acknowledge that Franklin has cast all of her claims against MS Dealer as tort claims rather than contract claims. "However, it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract." Sunkist Soft Drinks, 10 F.3d at 758 (internal quotation marks and alterations omitted). In addition, we note that the arbitration clause specifically requires arbitration of "[a]ll disputes and controversies of every kind and nature . . . arising out of or in connection with this contract, its subject matter or its negotiation, as to . . . any claim alleging fraud in fact [or] fraud in the inducement . . . ." Buyers Order at 2.

9

Supp. at 1433; see also Roberson v. Money Tree of Ala., Inc., 954 F. Supp. 1519, 1529 (M.D. Ala. 1997) (compelling arbitration between plaintiffs-signatories to loan agreement and a nonsignatory to the loan agreement where the plaintiffs-signatories pleaded "that all the defendants [(both signatory and nonsignatory)] cooperated in a fraudulent scheme to sell [the plaintiffs-signatories] unnecessary insurance through various suppressions and misrepresentations" because the plaintiffs-signatories' "theory that the defendants acted together to establish a scheme to fraudulently load unnecessary and expensive insurance policies onto high-interest consumer loan agreements gives rise to a set of complaints about their contract obligations [(to obtain and pay for insurance)] that implicate all defendants inseparably"); cf. Boyd, 981 F. Supp. at 1434 (explaining that equitable estoppel does not apply where signatory to arbitration clause does not allege that the nonsignatory defendant cooperated with a signatory defendant in a fraudulent scheme).

For the foregoing reasons, we find that Franklin is equitably estopped from avoiding arbitration with MS Dealer. Accordingly, we need not determine whether MS Dealer could enforce arbitration under an agency theory or a third-party-beneficiary theory.

**IV.**

Franklin raises several other arguments in support of her claim that arbitration may not be compelled under the FAA in this case. We dispose of them summarily.

She contends that the FAA should not even apply to the Buyers Order or other such consumer contracts. The FAA makes enforceable a written arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Franklin does not dispute that the contract here "evidenced a transaction involving commerce," as that phrase has been interpreted

10

by the Supreme Court in cases such as <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 277 (1995) (holding that the "word 'involving' . . . signals an intent to exercise Congress' commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, <u>in fact</u>, to have involved interstate commerce"), but rather requests that this court disavow Supreme Court precedent and adopt a more restrictive interpretation. Of course, we decline this invitation to part ways with the Supreme Court.

She also argues that (1) requiring arbitration in this case violates her Seventh Amendment right to a jury trial and (2) the Magnuson-Moss Act prohibits arbitration in this case involving the sale of a car and a service contract. "However, an examination of the pleadings before the district court indicates that th[ese] issue[s] w[ere] not raised below. The claim[s] [are] therefore waived." <u>Florida Int'l Indem. Co. v. City of Metter</u>, 952 F.2d 1297, 1298 (11th Cir. 1992); <u>see</u> Franklin's Mot. To Dismiss (articulating five reasons for dismissing MS Dealer's petition for arbitration, none of which mention the Constitution or the Magnuson-Moss Act). Moreover, and with respect to her Magnuson-Moss Act argument, we note that Franklin's counsel admitted in oral argument that Franklin has not even brought a claim cognizable under the Magnuson-Moss Act.

## V.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND with instructions to grant MS Dealer's petition to compel arbitration.

11