

IN THE

# Indiana Supreme Court

FILED

Jan 15 2021, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Supreme Court Case No. 21S-CT-15

## Jane Doe I, as Legal Guardian of the Person and Estate of Jane Doe II, an Incapacitated Adult,

*Appellant*

–v–

## Carmel Operator, LLC d/b/a Carmel Senior Living, et al.,

*Appellees*

---

Argued: September 24, 2020 | Decided: January 15, 2021

Appeal from the Hamilton Superior Court
No. 29D01-1811-CT-11534
The Honorable Michael A. Casati, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-CT-2191

---

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

Agreements to arbitrate have become commonplace in modern society. Many appreciate how they can keep legal costs down, ensure parties' confidentiality, and provide a flexible alternative to the traditional court system. Despite these benefits, there are limits to enforcing arbitration agreements, particularly when outside parties are involved.

Generally, to enforce an arbitration clause, one must be either a signatory or otherwise provided for in the original agreement. In rare circumstances, however, an outside party not contemplated by the agreement may enforce an arbitration clause against a signatory. One way is by invoking the doctrine of equitable estoppel.

Under Indiana law, equitable estoppel can be applied only if three elements are shown: lack of knowledge, reliance, and prejudicial effect. We reiterate these three requirements today and decline to adopt any alternative theories of the doctrine.

# Facts and Procedural History

Seventy-seven-year-old Jane Doe II ("Jane") was asked to leave her previous assisted living facility when it could no longer provide her the care she needed. Jane's legal guardian, Jane Doe I ("Guardian"), toured a number of communities and ultimately chose Carmel Senior Living ("CSL"). After Guardian paid a deposit to CSL and arranged for Jane to move in, CSL emailed her its residency contract. Within the residency contract was an arbitration agreement ("Agreement"), which Guardian initialed. Guardian later signed and delivered the entire contract to CSL.

After Jane had been living at the community for a few months, Guardian filed a complaint against CSL; CSL's management company, Spectrum; and one of CSL's employees, Michael Sullivan. The complaint alleged that Sullivan had sexually abused Jane and that CSL and Spectrum (together, "CSL") should be vicariously liable for her damages.

Guardian later amended the complaint to add Certiphi Screening, the company CSL had hired to run background checks on new employees,

after she learned of its involvement. The amended complaint alleged that both CSL and Certiphi negligently failed to discover Sullivan's prior felony convictions for a sex crime and murder.

CSL demanded that Guardian arbitrate her claims under the Agreement, but Guardian refused. Certiphi also demanded arbitration. Although not a signatory to the Agreement, Certiphi argued, in relevant part, that Guardian's claims against it are nonetheless subject to arbitration under either a theory of agency or equitable estoppel. Guardian countered that Certiphi was not a party to the Agreement and thus the Agreement was inapplicable to it.

The trial court agreed with CSL and Certiphi, granting their motions to compel. As to Certiphi, the court determined that the Agreement covered the company under an agency theory. The court also concluded that equitable estoppel mandated arbitration of Guardian's claims against Certiphi, relying on *German American Financial Advisors & Trust Co. v. Reed*, 969 N.E.2d 621 (Ind. Ct. App. 2012). In *Reed*, our Court of Appeals adopted two alternative theories of equitable estoppel that allow, under certain circumstances, a nonsignatory to compel arbitration against a signatory. *Id.* at 627–28 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). The trial court determined both theories applied.

Guardian appealed, and the Court of Appeals affirmed. *Doe 1 v. Carmel Operator*, *LLC*, 144 N.E.3d 743, 759 (Ind. Ct. App. 2020). We now grant transfer to address whether Certiphi can compel arbitration against Guardian. Ind. Appellate Rule 58(A). On all other points, we summarily affirm the Court of Appeals. *See* App. R. 58(A)(2).

## Standard of Review

A trial court's decision on a motion to compel arbitration is reviewed de novo. *Med. Realty Assocs., LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 874 (Ind. Ct. App. 2010).

# Discussion and Decision

Certiphi, a nonsignatory, argues that it can enforce the arbitration clause against Guardian, who was a party to the Agreement. Certiphi asserts that it is an agent—making it an intended third-party beneficiary—or that equitable estoppel applies.

To resolve this dispute, we apply Indiana contract law principles. We acknowledge that CSL and Guardian chose the Federal Arbitration Act to govern their agreement, rather than state law. But while federal law governs the Agreement's substance, the United States Supreme Court has explained that traditional state contract law principles will control the Agreement's scope. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). And an agreement's scope includes "the question of who is bound by [it]." *Id.* at 630. In short, while the substantive terms of an agreement will be interpreted under federal law, the question of who is bound by it is the domain of state law.

Indiana has long recognized the freedom of parties to enter into contracts. *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995). Indeed, we presume that they represent the freely bargained agreement of parties. *Id.* We will thus enforce contracts, so long as they aren't illegal or against public policy. *Id.* at 1130.

These basic principles govern arbitration agreements. *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004). So, when two parties enter into a contract that includes an arbitration clause, courts will presume the parties made the agreement willingly. *Id.* And, unless something in the arbitration clause is illegal or contravenes public policy, a court will enforce it so long as the dispute is covered within the broader contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 777 (Ind. Ct. App. 2011). These concepts are straightforward. But enforcing an arbitration clause can get more complicated when the agreement involves a nonsignatory.

Applying Indiana contract-law principles, we conclude that Certiphi cannot enforce the Agreement. As explained below, the record does not

support a finding of an agency relationship; Certiphi cannot satisfy the established elements of equitable estoppel; and we decline to endorse any alternative theories of the doctrine.

## I.  Certiphi is not an "agent," one of the third-party beneficiaries provided for in the arbitration clause.

Certiphi argues that it can enforce the arbitration agreement, reasoning that the agreement explicitly requires Guardian to arbitrate her dispute with an agent of CSL. As explained below, while we agree that an "agent" is an intended third-party beneficiary in the Agreement, there is no evidence of an agency relationship between Certiphi and CSL.

Ordinarily, only contracting parties, or those in privity with them, have rights under an arbitration agreement. *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996). But these parties may want to allow a nonsignatory, like Certiphi, to also enforce the agreement when a dispute arises. In those cases, the parties must make it explicit in the contract. *Id.* at 1315.

When the signatories expressly communicate that desire, the outside party is an intended third-party beneficiary because the agreement imposes an obligation on a contracting party in favor of the nonsignatory. *Id.* It is not enough, however, that performance of the contract would benefit the outside party; the contracting parties' intent must be clear. *Id.*

Thus, our first step in determining whether Certiphi, a nonsignatory, can compel Guardian to arbitrate is to look at the language of the arbitration agreement. *See Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752–53 (Ind. 2018). Here, CSL's agreement with Guardian provided that claims involving Jane's stay at CSL shall be resolved by arbitration, including claims against "[CSL's] employees, agents, officers, directors, any parent, subsidiary or affiliate of [CSL]." Under the Agreement, then, Guardian had a duty to arbitrate her claims against any of these listed parties since they were third-party beneficiaries who would explicitly

benefit from Guardian's agreement with CSL if Guardian ever brought a claim against them.

Certiphi argues that it is an "agent" of CSL and therefore is covered under the terms of the Agreement. An agency relationship involves an "agent" agreeing to transact some business or manage some affair on behalf of a "principal." *Kifer v. State*, 137 N.E.3d 990, 992 (Ind. Ct. App. 2019). There are three requirements for an agency relationship to exist: (1) a manifestation of the principal's consent; (2) the agent's acceptance of authority; and (3) control exerted by the principal over the agent. *Id.* (quoting *Demming v. Underwood*, 943 N.E.2d 878, 883 (Ind. Ct. App. 2011), *trans. denied*).

Nothing in the record supports a conclusion that these elements have been satisfied. Even if we assume that CSL consented to Certiphi running background checks on CSL's employees and that Certiphi accepted this authority, we cannot assume CSL exerted any control over the process by which Certiphi conducted Sullivan's background check. To the contrary, we have no evidence suggesting Certiphi's relationship to CSL was other than that of an independent contractor hired to screen CSL's potential employees. Thus, Certiphi was not covered by the arbitration agreement as an "agent."[1]

---

[1] In dicta, the panel asserts, at least implicitly, that the Agreement's broad, sweeping language of "any and all claims" should cover the dispute against Certiphi even if it's not one of the third-party beneficiaries explicitly listed. In so noting, the panel cites several Court of Appeals cases in support. *See Carmel Operator*, 144 N.E.3d at 758 (Ind. Ct. App. 2020) (citing *e.g.*, *Dulworth v. Bermudez*, 97 N.E.3d 272, 281 (Ind. Ct. App. 2018)). But, contrary to the panel's suggestion, this question—that is, the reach and permissibility of such expansive language within arbitration clauses—is not firmly resolved within our Court of Appeals. *See, e.g.*, *Franklin*, 814 N.E.2d at 285–86 (Ind. Ct. App. 2004) (rejecting nonsignatory's argument that the arbitration clause was "broadly written to cover all claims arising out of the contract" and holding instead that only parties in privity or intended third-party beneficiaries may enforce an agreement as nonsignatories). While this Court has yet to address the issue, we leave it for another day. Although Certiphi briefly mentions that the claims against it should have been covered by the Agreement's broad language, it fails to develop this argument and rather focuses on whether it's an "agent" of CSL.

This conclusion doesn't end our inquiry. In rare circumstances, a nonsignatory may enforce an arbitration agreement even if it is not an intended third-party beneficiary. One way is to invoke the doctrine of equitable estoppel—which Certiphi argues, in the alternative, applies here.

## II. Certiphi cannot meet the requirements of equitable estoppel: lack of knowledge, reliance, and prejudicial effect.

In exceptional situations, a court may employ the doctrine of equitable estoppel to allow a nonsignatory to enforce a contract, even though it wasn't included in the agreement. Certiphi argues this is such a situation.

In this context, the doctrine of equitable estoppel would work like this: if Certiphi were entitled to rely—and did rely—on Guardian's conduct or assertions, then Certiphi could "estop" Guardian from acting to Certiphi's detriment. *See Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001). To state it differently, when equitable estoppel applies, it prevents a contracting party from making some argument or claim because it previously misled or induced a third party to act in a way contrary to how that third party otherwise would have acted.

This powerful doctrine, however, applies only when three elements are met: the party claiming estoppel must (1) lack knowledge and the means of knowledge as to the facts in question, (2) rely upon the conduct of the party to be estopped, and (3) experience a prejudicial change in position based on the conduct of the party to be estopped. *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 547 (Ind. 2006) (quoting *City of Crown Point v. Lake Cty.*, 510 N.E.2d 684, 687 (Ind. 1987)).

Despite its assertion, Certiphi cannot avail itself of equitable estoppel. There is nothing to suggest that Certiphi knew about the Agreement prior to Guardian's suit. There is no evidence that Certiphi relied on the Agreement. And there is nothing to show that Certiphi experienced any sort of detriment because of reliance.

Certiphi counters, however, that it need not show these elements of equitable estoppel. Rather, it points out that our Court of Appeals has adopted alternative theories of the doctrine that apply to Guardian's claims against it.

## III. We decline to endorse any alternative equitable estoppel theories.

Certiphi argues that arbitration is required because the alternative theories of equitable estoppel our Court of Appeals adopted in *German American Financial Advisors & Trust Co. v. Reed*, 969 N.E.2d 621 (Ind. Ct. App. 2012), apply to its dispute with Guardian. But we decline to endorse *Reed*'s approach.

In *Reed*, a split panel adopted alternative theories of equitable estoppel that had become part of the federal common law throughout the 1990s and 2000s. 969 N.E.2d at 627–28; *see, e.g., Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000). The Eleventh Circuit succinctly set out these arbitration-by-estoppel theories in *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), explaining that a nonsignatory to an agreement could compel a party to arbitrate in two circumstances: (1) when the signatory has relied on the terms of a contract that includes an arbitration agreement in asserting a claim against the nonsignatory; and (2) when the signatory raises allegations of "substantially interdependent and concerted misconduct" by both the nonsignatory and another signatory to the agreement. *Reed*, 969 N.E.2d at 628 (quoting *MS Dealer*, 177 F.3d at 947).

Determining that both of these circumstances were satisfied, the *Reed* majority concluded that the nonsignatory could compel a signatory to arbitrate the dispute through equitable estoppel. *Id.* But a dissenting judge questioned whether the arbitration-by-estoppel approach was compatible with Indiana's established definition of "equitable estoppel." *Id.* at 629 (Barnes, J., concurring in part and dissenting in part). Under the traditional state law doctrine, the dissent noted, there was no basis to conclude that the nonsignatory was misled by a signatory's representation

that any disputes with the nonsignatory would be arbitrated. *Id.* The dissent also pointed out that other jurisdictions, such as Illinois, had refused to apply this "strained definition of equitable estoppel" from federal common law. *Id.* at 629–30 (cleaned up).

Here, the trial court found that both alternative federal theories of equitable estoppel applied. And since the Court of Appeals agreed that the second theory applied, it did not address the first.

Certiphi maintains that the second type of alternative estoppel applies because Guardian's claims against it are "substantially interdependent" with her claims against CSL. According to Certiphi, Guardian's claims against it cannot be separated from her claims against CSL, so if Guardian must arbitrate against CSL, then she must also arbitrate against Certiphi.

The claims are indeed closely related, and even Guardian has admitted as much. But we see no need to adopt alternative theories of equitable estoppel and decline to do so.

The federal common-law arbitration-by-estoppel theories developed out of the reasoning that, unless certain nonsignatories can compel arbitration, "the arbitration proceedings between the two signatories would be rendered meaningless" and any policy in favor of arbitration would be "effectively thwarted." *MS Dealer*, 177 F.3d at 947 (cleaned up). The courts that adopted the theories applied them specifically in situations where not compelling arbitration would be inefficient. *See, e.g.*, *Kingsley Cap. Mgmt., LLC v. Sly*, 820 F. Supp. 2d 1011, 1021 (D. Ariz. 2011). Thus, allowing nonsignatories to arbitrate was "more about judicial efficiency" than equity. *Id.* (quoting *Vassalluzzo v. Ernst & Young LLP*, No. 06-4215-BLS2, 2007 WL 2076471, at *4 (Mass. Super. Ct. June 21, 2007)).

But not all jurisdictions accept these federal common-law theories. The Ninth Circuit, for example, never adopted the approach, instead choosing to follow the general principle that "only those who have agreed to arbitrate are obliged to do so." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). Other courts rejecting the theories pointed out that they didn't follow traditional contract principles and would deny plaintiffs access to the courts even though they had not agreed to arbitrate

their claims. *See, e.g., Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 542–43 (Ill. App. Ct. 2004).

This divide continued until *Arthur Andersen v. Carlisle*, when the United States Supreme Court held that traditional principles of state contract law—not federal common law—should apply in determining the scope of an arbitration agreement. 556 U.S. 624, 630–31 (2009). *Carlisle* clarified that the Federal Arbitration Act does not alter "background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Id.* at 630. Thus, state law must be applied to determine "the validity, revocability, and enforceability" of arbitration agreements, just like other contracts. *Id.* at 631.

*Carlisle*'s holding did not mean that states couldn't follow the federal common law; to the contrary, if states wanted to opt into the alternative theories, they could. But it effectively abrogated any case that applied federal common law while ignoring state contract law. The Eleventh Circuit itself has acknowledged that *Carlisle* "overruled or at least undermined to the point of abrogation" any of the circuit's earlier decisions "to the extent [they] indicate to the contrary." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011) (pointing to a number of cases, including *MS Dealer*, 177 F.3d at 947).

Three years after *Carlisle*, our Court of Appeals in *Reed* decided to nonetheless apply the federal common law. Though it wasn't necessarily incorrect to adopt the alternative arbitration-by-estoppel theories, the majority did so without acknowledging the traditional elements of equitable estoppel grounded in state law. *Reed*, 969 N.E.2d 621. We find this lack of consideration of Indiana common law concerning for three reasons.

First, if the *Reed* majority had considered the traditional elements, it would have found these alternative theories of estoppel ignore one of the most important requirements for equitable relief: **reliance upon the conduct of the party to be estopped**. *See Money Store Inv. Corp.*, 849 N.E.2d at 547. In other words, when a nonsignatory is induced by a signatory to act a certain way and then is prejudiced by those actions, courts are justified in using their equitable powers. Thus, Indiana courts

reject claims of equitable estoppel when a party can't show evidence of reasonable and detrimental reliance. *See, e.g.*, *Lafayette Car Wash, Inc. v. Boes*, 258 Ind. 498, 502, 282 N.E.2d 837, 840 (1972); *see also Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 237 (Ind. Ct. App. 1998), *trans. denied*.

Second, because the federal common-law theories don't require reliance, they likewise require no relationship—not even a cursory one—between the parties. This means there is no easily determined limit on which nonsignatories can seek to compel arbitration. As the Texas Supreme Court put it, the federal doctrine "would sweep independent entities and even complete strangers into arbitration agreements"—an outcome the signatories didn't contemplate. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007).

Finally, we also find the alternative theories inconsistent with other aspects of our common law, particularly the guiding principle that the intent of the parties to an agreement should govern. *Sawyer*, 93 N.E.3d at 753. Arbitration is generally a matter of consent, so when two parties enter an agreement to arbitrate a dispute, the terms of that agreement should control. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 598 (Ind. Ct. App. 2003). Neither party should be forced to arbitrate against a party who isn't a signatory, an intended third-party beneficiary, or a predictable party under Indiana contract law. And to force signatories to arbitrate claims they did not agree to arbitrate would unfairly deny them their rightful access to the courts. *See Ervin*, 812 N.E.2d at 542.

For those reasons, we decline to endorse the alternative theories of equitable estoppel and adhere instead to the doctrine's traditional, well-established principles. Thus, to the extent that *Reed* strays from these traditional principles, we disapprove it.

# Conclusion

We reverse the trial court's determination that Certiphi can compel Guardian to arbitrate her claims against it—nothing in the record shows that Certiphi is an agent of CSL or that the traditional elements of equitable estoppel are satisfied. As to CSL, Spectrum, and Sullivan,

however, we affirm the trial court's order compelling Guardian to arbitrate.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEY FOR APPELLANT
Ashley N. Hadler
Garau Germano, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES CARMEL OPERATOR, LLC AND SPECTRUM RETIREMENT COMMUNITIES, LLC
Katherine M. Haire
Reminger Co., LPA
Indianapolis, Indiana

Rafael P. McLaughlin
Reminger Co., LPA
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE CERTIPHI SCREENING, INC.
Chad J. Kaldor
Littler Mendelson, P.C.
Columbus, Ohio

Peter T. Tschanz
Littler Mendelson, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE MICHAEL DAMON SULLIVAN
David G. Field
Jeffrey M. Kraft
Schultz & Pogue, LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE INDIANA TRIAL LAWYERS ASSOCIATION
James E. Stolz
Gerling Law Offices, P.C.
Evansville, Indiana