NOT DESIGNATED FOR PUBLICATION

No. 128,403

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JENNIFER ANDERSON,
*Appellee*,

v.

WELLS FARGO CLEARING SERVICES, LLC, d/b/a/ WELLS FARGO ADVISORS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Oral argument held August 5, 2025. Opinion filed December 26, 2025. Affirmed.

*Eric D. Martin*, of Norton Rose Fulbright US LLP, of St. Louis, Missouri, and *Alan L. Rupe*, of Lewis Brisbois Bisgaard & Smith LLP, of Wichita, for appellant.

*Chris Steincamp* and *Braxton T. Moral*, of Depew Gillen Rathbun & McInteer, LC, of Wichita, for appellee.

Before GARDNER, P.J., COBLE and BOLTON FLEMING, JJ.

COBLE, J.:  Jennifer Anderson, as co-trustee of a trust, sought a pay-on-death transfer of funds held by Wells Fargo Clearing Services, LLC, d/b/a Wells Fargo Advisors (Wells Fargo), to the trust following the death of the account owner. Wells Fargo then sought arbitration of the dispute which the district court denied. Wells Fargo contends that the trust was the successor in interest to the cash account and so was subject to the arbitration clause within the account agreement. Alternatively, Wells Fargo argues that Anderson should be equitably estopped from avoiding arbitration as the direct

1

beneficiary of the agreement. As a result, Wells Fargo argues that the district court lacked the authority to determine issues of arbitration or decide the merits of the case. After thorough review, we find Wells Fargo fails to bear its burden on appeal and we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

The factual record before this court on appeal is thin. From the information provided by the parties, we glean the following facts:

William Gates opened a cash account with Wells Fargo in March 2013. The "General Account Agreement and Disclosure Document" (Account Agreement) is included in the record, but the specific terms of William's account were not included. Still, the parties agree that the cash account contained a pay-on-death (POD) provision and that William designated the Bill and Louise Gates Joint Revocable Trust (Trust) as the beneficiary of that provision.

William Gates died on September 2, 2023. Although the record does not provide details, Louise Gates apparently preceded William in death since the record references William as "the last surviving accountholder." Anderson, one of the co-trustees of the Trust, submitted a letter of authorization to Wells Fargo on October 16, 2023, requesting payment of the remaining balance in the cash account into the Trust. Wells Fargo refused to remit the balance of the account without additional documentation. When Anderson provided the requested documents, Wells Fargo asked for additional documents. After this persisted for several months, Anderson sought legal representation and her attorney issued a demand letter to Wells Fargo. When Wells Fargo responded with a form letter, Anderson filed suit on March 29, 2024, claiming damages caused by Wells Fargo's months-long delay and for emotional distress. The legal bases for damages are not clearly

2

articulated, though Anderson alleged conversion and fraud as well as breach of fiduciary duties and breach of the implied covenant of good faith and fair dealing.

In its answer to the petition, Wells Fargo admitted that Anderson was a co-trustee and that she provided Wells Fargo with a death certificate and additional documentation. Although Wells Fargo contended that Anderson initially failed to list the correct account beneficiaries, it ultimately conceded that Anderson was entitled to payment because it tendered a check to Anderson in the amount of $46,125.06 in April 2024, shortly after she filed this lawsuit. This amount ostensibly reflected the balance of the cash account minus applicable fees. Among other affirmative defenses, Wells Fargo alleged that Anderson's suit was barred by an arbitration agreement and asked the district court to compel arbitration.

Following a nonevidentiary hearing on Wells Fargo's motion, the district court denied the motion to compel arbitration, finding that Anderson was not a party to the contract requiring arbitration.

Wells Fargo appeals that ruling.

THE DISTRICT COURT DID NOT ERR IN DENYING
WELLS FARGO'S MOTION TO COMPEL ARBITRATION

Wells Fargo contends that the district court erred in denying its motion to compel arbitration. It raises alternative arguments: (1) The contract language extends the arbitration clause to the Trust; and (2) as the direct beneficiary, Anderson as trustee of the Trust is equitably estopped from seeking to avoid the arbitration provisions.

3

*Contract Interpretation*

Kansas courts favor arbitration agreements, but a person generally cannot be required to arbitrate a dispute without a contractual agreement to do so. *Duling v. Mid American Credit Union*, 63 Kan. App. 2d 428, 434-35, 530 P.3d 737 (2022). A district court properly exercises jurisdiction over the applicability of an arbitration provision for the purpose of determining whether an enforceable agreement to arbitrate exists. 63 Kan. App. 2d at 434. Whether parties to an agreement must submit to arbitration is governed by the intent of the parties. 63 Kan. App. 2d at 435. If the parties have entered into an enforceable written agreement, this intent is determined through the language of the agreement. Interpretation of a written contract is a question of law subject to unlimited appellate review. An appellate court owes the district court no deference in construing the contractual provisions. 63 Kan. App. 2d at 434. Where the terms of a written contract are ambiguous, the parties' intent to enter an agreement must be determined from the circumstances, which presents a question of fact subject to limited appellate review. The appellate court simply reviews the district court's findings to determine whether substantial competent evidence supports those findings. 63 Kan. App. 2d at 435.

The existence of a contractual agreement between Wells Fargo and Gates is not in dispute. Both parties recognize that Gates executed an Account Agreement for a cash account with Wells Fargo. Some of the terms of that agreement are not clearly spelled out in the record on appeal, but the existence of an agreement is not disputed.

We must first address whether Anderson was a party to this contract between Wells Fargo and Gates. Generally, privity of contract is an essential element to any cause of action arising under contract. Privity of contract is the connection or relationship between two or more contracting parties. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, Syl. ¶ 8, 453 P.3d 304 (2019). The parties do not dispute that Anderson did not negotiate the terms of the Account Agreement between Gates and Wells Fargo and was

4

not a participant in the performance of the contract. In short, Anderson lacked privity with the Account Agreement.

But Wells Fargo argues that the contract language extends application of the arbitration clause to the Trust, and as a result, Anderson as trustee. The sole written agreement provided in the record and relied upon by Wells Fargo—the Account Agreement—contained an arbitration clause, which provided, in material part:

"5. ARBITRATION

"Arbitration Disclosures:

"This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the Parties agree as follows:

- "All of the Parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which the claim is filed.

  . . . .

"Arbitration Provision:

"It is agreed that all controversies or disputes which may arise between you and WFA, including controversies or disputes with WFA's clearing agent (collectively, 'us'), concerning any transaction or the construction, performance or breach of this Agreement or any other agreement between us, whether entered into prior to, on, or subsequent to the date of this Agreement, including any controversy concerning whether an issue is arbitrable, shall be determined by arbitration conducted before, and only before, an arbitration panel set up by either the Financial Industry Regulatory Authority ('FINRA') in accordance with its arbitration procedures. Any of us may initiate arbitration by filing a written claim with FINRA. Any arbitration under this Agreement will be conducted

5

pursuant to the Federal Arbitration Act and the Laws of the State of New York. The state or federal statute of limitations, statute of repose, non claim statute or any other time bar that would be applicable to any claim filed in a court of competent jurisdiction shall be applicable to any claim filed in arbitration."

In another portion of the same agreement, the parties bound themselves to certain definitions of terms, including "'Party' or 'Parties'"—meaning "you and Wells Fargo Advisors, together with their affiliates, collectively"—and "'You,' 'Yours,' 'the Undersigned,' and 'Accountholder'"—meaning "the person(s) who have entered into this Agreement with Wells Fargo Advisors." Notably, none of these definitions encompass beneficiaries.

The Account Agreement clearly governs many types of accounts and contains separate provisions about beneficiaries of individual retirement accounts and education savings accounts, as well as for beneficiaries of annuity contracts. In the agreement's discussion of IRAs and education accounts, it directs that any named beneficiaries would be subject to a separate "'Custodial Agreement and Disclosure Statement.'" However, the record does not contain this "Custodial Agreement and Disclosure Statement," and the contents of such disclosure statement are unknown. Again, the only document provided by Wells Fargo to establish the existence of an arbitration agreement is the Account Agreement. Wells Fargo has provided no evidence that the two documents are the same despite the difference in references. Nothing in the Account Agreement's provisions referencing beneficiaries specifically binds beneficiaries to the terms of the arbitration provision.

Further complicating the question of a POD beneficiary's status under the Account Agreement is the failure by Wells Fargo, as the appealing party, to produce the POD provision. As the party making a claim on appeal, the burden lies with Wells Fargo to designate a record sufficient to present its points to the appellate court and to establish its

6

claims. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 462-63, 509 P.3d 1211 (2022); see Supreme Court Rule 6.02(a)(4) (2025 Kan. S. Ct. R. at 36). Whether the POD provision may have included language which further defined a beneficiary's rights or duties under the Account Agreement remains a mystery.

Despite the absent provisions which may or may not have shed light on a beneficiary's status under the Account Agreement, Wells Fargo still contends that the Account Agreement is the sole document necessary to its argument because the agreement's scope provision binds Gates' heirs, executors, administrators, successors, and assigns to the terms of the agreement.

> "The provisions of this Agreement together with any additions, amendments or supplements, shall be continuous, shall cover individually and collectively all Accounts which you open now or in the future. *This Agreement shall be binding upon your heirs, executors, administrators, successors and assigns*." (Emphasis added.)

On appeal, Wells Fargo reasons that a beneficiary of a POD provision obtains its rights through the contractual agreement of the signatory and so is a successor in interest within the meaning of this scope provision. This precise argument made by Wells Fargo on appeal relies upon application of the Uniform Transfer on Death Security Registration Act (TOD Act), K.S.A. 17-49a01 et seq. But this argument fails on at least two bases.

First, Wells Fargo did not present this TOD Act argument to the district court. In its memorandum in support of the motion to compel arbitration, Wells Fargo reasoned only that the agreement "expressly binds [Gates'] heirs, executors, administrators, successors, and assigns" and simply argued that "as a trustee and beneficiary of the Trust designated as the beneficiary of the Cash Account, [Anderson] is expressly bound by the Account Agreement." Wells Fargo did not mention the TOD Act or use the Act to bolster its arguments before the district court, and generally, issues not raised to the district court

cannot be raised on appeal. *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022). Although there are exceptions to this rule, "[i]f the issue was not raised below, there must be an explanation why the issue is properly before the court." Kansas Supreme Court Rule 6.02(a)(5). Wells Fargo provided no such explanation. "A party who ignores this requirement is considered to have waived and abandoned any exception to the preservation rule." *In re N.E.*, 316 Kan. at 407.

Despite Wells Fargo's failure to preserve its argument, we find that its argument to the district court—that the Trust was an heir, successor, or assign of the Account Agreement—still invites examination of the TOD Act. Although Anderson was not a party to the Account Agreement itself, the question of whether she was Gates' legal "successor" could be answered under the TOD Act. And, like the interpretation of a written contract, a court exercises plenary review of the proper interpretation of a statute. See *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

But when we review Wells Fargo's attempt to incorporate securities law into its contract interpretation, we find Wells Fargo fails to meet its burden in a couple of ways. As a preliminary matter, Wells Fargo relies on Kansas law to interpret the contract, even though the parties contractually agreed that New York law would govern the agreement. Wells Fargo does not cite a single statutory provision or case authority from New York to promote its interpretation of "successor" within the scope provision, relying entirely on Kansas statutes. Given Wells Fargo's failure to address this choice-of-law issue, we find it unnecessary to engage in an analysis of which state's law applies. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (An issue not briefed is deemed waived or abandoned.).

Assuming we apply Kansas law, transfer-on-death provisions for securities in Kansas are governed by the TOD Act. Part of that Act, K.S.A. 17-49a12, outlines that the Act "applies to registrations of securities in beneficiary form." "Beneficiary form" is

further defined as "a registration of a security which identifies the present owner of the security and the intention of the owner regarding the person or persons who will become the owner or owners of the security upon the death of the owner." K.S.A. 17-49a01(a). "Security" is defined to encompass securities defined within K.S.A. 84-8-102 or within K.S.A. 17-12a102 or "a security account." K.S.A. 17-49a01(e). In turn, "Security account" is defined as:

> "(1) a reinvestment account associated with a security, a securities account with a broker, an agency account with a bank or trust company, *a cash balance in a brokerage account*, cash, interest, earnings or dividends earned or declared on a security in an account, a reinvestment account or a brokerage account, whether or not credited to the account before the owner's death, or (2) a cash balance or other property held for or due to the owner of a security as a replacement for or product of an account security, whether or not credited to the account before the owner's death." (Emphasis added.) K.S.A. 17-49a01(f).

The broad definition of "security account" seems to encompass the type of cash account Gates opened with Wells Fargo. The money placed in the account was managed by Wells Fargo as a brokerage account.

Notwithstanding Anderson's argument that the Trust was simply a payee, this broad definition of "security account" in the TOD Act, when read along with the ownership transfer provision of K.S.A. 17-49a07, seems to transfer actual ownership of the security account to the beneficiary upon an owner's death:

> "On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners. On proof of death of all owners, a security registered in beneficiary form may be registered in the name of the beneficiary or beneficiaries who survived the death of all owners. . . . If no beneficiary survives the death of all owners, the security belongs to the estate of the deceased sole owner or the estate of the last to die of all multiple owners." K.S.A. 17-49a07.

9

Under the Kansas TOD Act, a named beneficiary within a TOD or POD security account obtains ownership of the security on the death of all listed owners of the account. This is not dispositive of the question, though. As noted above, to the extent Wells Fargo seeks to enforce the specific provisions of its agreement, the agreement requires that New York law applies. But we are not at liberty to examine as much given Wells Fargo's failure to brief the question.

Additionally, any ownership of the funds under either Kansas or New York TOD law does not necessarily mean that the Trust, as beneficiary, also assumes the entirety of the contractual responsibilities under the original Account Agreement which the new owner did not sign. We find no place in law which outright requires as much, and Wells Fargo provides us no authority to make this leap. In both respects—its failure to brief the applicable law and lack of authority provided to bridge the gap between owning the funds as POD and binding the new owner to the arbitration provision—Wells Fargo has not carried its burden on appeal to demonstrate error in the district court. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

Whether or not we presume New York law to be similar in scope and effect to Kansas' TOD Act, as explained above, the conclusion that a beneficiary of a TOD provision in a security account is legally deemed an owner of that account does not resolve the parties' dispute about the applicability of the arbitration provision. Even if Wells Fargo's interpretation of the TOD Act correctly outlines the legal effect of a TOD provision for securities, it does not necessarily govern the intent of the parties with respect to the arbitration provision contained in Gates' Account Agreement. Notably, the agreement between Gates and Wells Fargo does not clearly designate beneficiaries in the list of parties who remain bound to the terms of the agreement in the scope provision. The scope provision, itself, is a two-sentence paragraph buried within 50 pages of small print.

10

Wells Fargo now contends that Gates understood that "successor" included the named beneficiary of a TOD provision under a rather obscure statutory provision of Kansas law (or, potentially, New York law). But there is nothing in the record to suggest that Gates was trained in securities law or otherwise had specialized knowledge that would lead him to believe that "successor" encompassed the beneficiary he designated in the unproduced POD provision.

Under basic contract principles, a legally binding agreement cannot be formed if the parties to the contract do not reach a meeting of the minds as to the essential terms. *Duling*, 63 Kan. App. 2d at 436. While Gates and Wells Fargo unquestionably agreed that they would be bound to resolve their disputes by arbitration, Gates' understanding that his beneficiary would similarly be bound is uncertain. "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Steele v. Harrison*, 220 Kan. 422, Syl. ¶ 3, 552 P.2d 957 (1976).

Conspicuously absent from the list within the scope provision is "beneficiaries." Instead, the list of entities included in the scope provision are all entities that might seek to continue the contractual relationship with Wells Fargo after the death of the signatory. Notably the terms of the Account Agreement were not written specifically for the type of account opened by Gates but applied to all accounts managed by Wells Fargo. As a result, some provisions would not necessarily be applicable to every account. For example, the Account Agreement contains a lengthy description of annuities, even though Gates' account was not an annuity. Clearly, the scope provision encompassed accounts that did not have a POD provision, allowing the contractual relationship to continue after the death of the signatory.

11

As a matter of common language usage, a beneficiary of a POD account is not equivalent to "heir, executor, administrator, successor, or assign." Each of the listed terms has a specific meaning in the law. While a person may be both a beneficiary and an heir, successor, or assign, conflating the terms ignores the different legal roles the terms reflect. A beneficiary is distinguishable from any of the roles listed in the scope provision in that a beneficiary generally cannot dictate the terms of the agreement or trust under which they receive their benefit. See Black's Law Dictionary 191 (12th ed. 2024) (defining beneficiary as "[s]omeone who is designated to receive the advantages from an action or change; esp., one designated to benefit from an appointment, disposition, or assignment [as in a will, insurance policy, etc.], or to receive something as a result of a legal arrangement or instrument.").

In this case, Anderson, as trustee of the Trust, happened to be one of Gates' heirs, but Wells Fargo's attempts to classify her as an heir misrepresents her legal position with respect to the Wells Fargo cash account. Anderson has not sought payment from Wells Fargo as one of Gates' heirs but as trustee of the Trust—the beneficiary of the POD provision. In her role as trustee, Anderson did not have the authority to maintain Gates' cash account with Wells Fargo because we presume the terms of the POD provision simply required distribution at Gates' death (though we do not have the benefit of this provision). Anderson, depending on the terms of the trust, perhaps could have opened a new account with Wells Fargo, but she could not have continued the existing account under the terms accepted by Gates. While operation of law makes a TOD beneficiary a successor-in-interest to the security account, no layperson reading this list of entities within the scope provision would be placed on notice that they were binding the beneficiaries of a TOD provision to the terms of the Account Agreement, including the arbitration provisions. No evidence demonstrates, with reasonable definiteness, as much.

As such, Wells Fargo has failed to establish a meeting of the minds regarding Gates' understanding that beneficiaries of the POD provision of the cash account would

12

be required to submit to arbitration. As a matter of contract interpretation, the district court properly concluded that nothing within the Account Agreement unambiguously provided Gates notice that his beneficiaries would be required to resolve disputes through arbitration. To the extent that the "Custodial Agreement and Disclosure Statement" or POD provision provided otherwise, Wells Fargo did not produce either document and fails to meet its burden on appeal.

*Third-Party Beneficiary*

Although Anderson was not a party to the Account Agreement, Kansas law authorizes a nonsignatory, third party to enforce the terms of a contract when the third party is an intended beneficiary of the contract. *Cornwell v. Jespersen*, 238 Kan. 110, Syl. ¶ 2, 708 P.2d 515 (1985) ("In order for a person, not privy to a contract, to sue on that contract as a third party beneficiary, he must establish that the contract was made for his benefit as its object and he must be the party intended to be benefitted. An intent to benefit the third person must be clearly expressed in the contract. However, it is not necessary that the third person be the exclusive beneficiary—the contract may also benefit the contracting parties."). Although the POD provision of Gates' account is not presented in the record, the parties both concede that the Trust was the stated beneficiary of such a provision. Accordingly, the Trust qualifies as a third-party beneficiary.

Under general contract principles, a third-party beneficiary may enforce a contractual provision against one of the original parties to the contract. See *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 793, 107 P.3d 1219 (2005); *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citing *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1429 [M.D. Ala. 1997]); *O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 901 (10th Cir. 1992). But the cases citing this principle involve a third-party beneficiary seeking to enforce an arbitration provision against an original signatory to the agreement—not the reverse. Without contractual privity, an arbitration

provision cannot be enforced against a nonsignatory, third-party beneficiary. See *GFTLenexa, LLC*, 310 Kan. at 986 ("In the absence of a third-party beneficiary, a contract binds only the parties that enter into the contract; it is not enforceable against a third party that did not negotiate the contract, did not accept the terms of the contract, and did not receive any consideration for the contract.").

*Equitable Estoppel*

Even so, some courts have bound nonsignatory third-party beneficiaries to the terms of a contract under equitable principles, reasoning that a third-party beneficiary seeking to enforce terms of a contract should be subject to the terms of that contract. See *E.I. DuPont de Nemours v. Rhone Poulenc Fiber*, 269 F.3d 187, 195 (3d Cir. 2001) ("[W]hether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary."); *Custom Performance, Inc. v. Dawson*, 57 So. 3d 90, 97-98 (Ala. 2010) ("Regardless of whether a nonsignatory is in fact a third-party beneficiary, the nonsignatory is treated as a third-party beneficiary—and is equitably estopped from avoiding arbitration—when he or she asserts legal claims to enforce rights or obtain benefits that depend on the existence of the contract that contains the arbitration agreement."); *N.A. Rugby Union v. United States Rugby Football Union*, 442 P.3d 859, 866 (Colo. 2019) ("[T]he principle of equitable estoppel can bind a nonsignatory to an arbitration provision in an agreement when the nonsignatory has knowingly exploited that agreement, as, for example, by claiming or accepting direct benefits of the agreement.").

Courts, however, are reluctant to apply equitable estoppel against a nonsignatory seeking to avoid arbitration unless the nonsignatory has embraced the contract during the life of the contract. *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 38 (1st Cir. 2017); *E.I. DuPont*, 269 F.3d at 200 ("Generally, these cases involve non-signatories who, during the

14

life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract."). Under the reasoning of these courts, this case is distinguishable from the application of equitable estoppel in *E.I. DuPont* because the Trust had not embraced the Account Agreement between Wells Fargo and Gates throughout the life of the contract but only obtained an interest in the contract at its termination following the death of Gates and activation of the POD provision.

In Kansas, equitable estoppel requires demonstration of three elements:

"(1) the party was induced to believe certain facts as a result of another person's acts, representations, admissions, or silence when that person was under a duty to speak; (2) the party relied and acted upon those facts; and (3) the party would be prejudiced if the other person were allowed to deny the existence of those facts." *Chelf v. State*, 46 Kan. App. 2d 522, 535, 263 P.3d 852 (2011).

Wells Fargo has not demonstrated the existence of any of these facts as it relates to the Trust's conduct with respect to the cash account. Again, the Trust lacked any interest in the account until Gates died. See *Sheils v. Wright*, 51 Kan. App. 2d 814, 817, 357 P.3d 294 (2015) (transfer-on-death vests in beneficiary on death of grantor; right may be revoked during the life of grantor even by transferring the property so no property remains to transfer on death). Accordingly, it is difficult to comprehend how the Trust encouraged Wells Fargo to adopt any position regarding the cash account that Wells Fargo relied on to its detriment, and Wells Fargo does not demonstrate as much.

The cash Account Agreement between Wells Fargo and Gates created a contingent third-party beneficiary in the Trust. During Gates' lifetime, he could have removed the funds from the account or designated another beneficiary. At his death, the assumed contractual terms of the POD provision authorized the Trust to prosecute the contractual claims as an intended third-party beneficiary. See *Krigel & Krigel v. Shank &*

*Heinemann*, 63 Kan. App. 2d 344, 356, 528 P.3d 1030 (2023) ("For a third party to claim benefits from a contract, 'an intent to benefit a third person must be clearly expressed in the contract.'") (quoting *State ex rel. Stovall*, 278 Kan. 777, Syl. ¶ 6). But the Trust did not embrace the benefits of the Account Agreement during the life of the contract to an extent that Wells Fargo may rely on equitable estoppel to enforce an arbitration provision against the Trust. See *Ouadani*, 876 F.3d at 38; *E.I. DuPont*, 269 F.3d at 200.

Although Anderson's claims against Wells Fargo stem from duties created by contract, Anderson as trustee did not directly benefit from the contractual agreement between Gates and Wells Fargo such that application of equitable estoppel is appropriate. We find federal authority persuasive here. For Anderson's claims to rely on the Account Agreement containing the arbitration provision, that agreement must form the legal basis of her claims. See *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. Appx. 704, 709 (10th Cir. 2011) (unpublished opinion). "[I]t is not enough that the contract is factually significant to [Anderson's] claims or has a 'but-for' relationship with them." 449 Fed. Appx. at 709. Instead, her claims must be "'so intertwined'" with the agreement that "'it would be unfair to allow *the signatory* to rely on the agreement in formulating [her] claims but to disavow availability of the arbitration clause of that same agreement.'" (Emphasis added.) 449 Fed. Appx. at 709-10. Here, Anderson is unquestionably not a signatory to the agreement. And, arguably, her claims rely upon the terms of the POD provision—a document, or part of a document, which Wells Fargo provided neither on appeal nor to the district court. Under these circumstances, the district court properly concluded that Wells Fargo failed to present a legal or equitable theory entitling it to compel Anderson to pursue her disputes in arbitration.

Additionally, the equities in this case lie in a prompt resolution to Anderson's claim. Wells Fargo paid the funds due the Trust seven months after Gates' death and only after Anderson filed suit, then extended the dispute further by insisting upon arbitration. Because arbitration agreements are matters of contract, courts have allowed equitable

16

defenses to arbitration provisions. See, e.g., *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ("Like other contracts, however, [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'").

As a final, separate argument, Wells Fargo also complains about the district court's oral ruling from the bench, claiming that the court improperly decided issues related to the merits of the case when it should have only decided the arbitration question. In light of the foregoing discussion, this argument is moot. Because the arbitration provision does not bind Anderson or the Trust, the district court's prejudgment of the merits—to the extent that occurred—is not invalidated by the arbitration provision.

Affirmed.